# EXHIBIT A

Query    Reports    Utilities    Help    Log Out

CLOSED

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:22-cv-02127-RBS

PURNELL v. GOODLEAP, LLC et al                    Date Filed: 05/31/2022
Assigned to: HONORABLE R. BARCLAY SURRICK        Date Terminated: 06/07/2022
Demand: $75,000,000                               Jury Demand: None
Case in other court:  Philadelphia Court of Common Pleas,   Nature of Suit: 190 Contract: Other
                 229500085                         Jurisdiction: Diversity
Cause: 28:1332 Diversity-Conversion

**Plaintiff**

**GWENDOLYN PURNELL**                represented by   **ANDREW M. MILZ**
                                                      FLITTER MILZ, P.C.
                                                      450 N NARBERTH AVE SUITE 101
                                                      NARBERTH, PA 19072
                                                      610-668-0018
                                                      Email: amilz@consumerslaw.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **PETER D. SCHNEIDER**
                                                      COMMUNITY LEGAL SERVICES, INC.
                                                      1424 CHESTNUT ST.
                                                      PHILADELPHIA, PA 19102
                                                      215-981-3718
                                                      Email: pschneider@clsphila.org
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **ROBERT WILSON BALLENGER**
                                                      COMMUNITY LEGAL SERVICES
                                                      1424 CHESTNUT ST
                                                      PHILADELPHIA, PA 19102
                                                      215-981-3788
                                                      Email: rballenger@clsphila.org
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **JODY T LOPEZ-JACOBS**
                                                      450 Narberth Ave
                                                      Suite 101
                                                      Narberth, PA 19072
                                                      610-266-7863
                                                      Fax: 610-667-0552
                                                      Email: jlopez-jacobs@consumerslaw.com
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**GOODLEAP, LLC**                                represented by    **SAMANTHA L. SOUTHALL**
                                                                   BUCHANAN INGERSOLL & ROONEY
                                                                   PC
                                                                   50 S. 16TH ST STE 3200
                                                                   TWO LIBERTY PLACE
                                                                   PHILADELPHIA, PA 19102
                                                                   215-665-3884
                                                                   Email: samantha.southall@bipc.com
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **ALEXANDER NEMIROFF**
                                                                   GORDON & REES, LLP
                                                                   THREE LOGAN SQUARE
                                                                   1717 ARCH ST
                                                                   SUITE 610
                                                                   PHILADELPHIA, PA 19103
                                                                   267-602-2040
                                                                   Email: anemiroff@gordonrees.com
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**SUNRUN, INC.**                                 represented by    **ALEXANDER NEMIROFF**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**VIVINT SOLAR, INC.**                           represented by    **ALEXANDER NEMIROFF**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**VIVINT SOLAR DEVELOPER, LLC**                  represented by    **ALEXANDER NEMIROFF**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/31/2022 | 1 | NOTICE OF REMOVAL by Vivint Solar, Inc., Sunrun Inc., Goodleap, LLC, VIVINT SOLAR DEVELOPER, LLC (Filing fee $ 402 receipt number APAEDC-15954078), filed by Vivint Solar, Inc., Sunrun Inc., Goodleap, LLC, VIVINT SOLAR DEVELOPER, LLC. (Attachments: # 1 Declaration of Alexander Nemiroff)(NEMIROFF, ALEXANDER) (Entered: 05/31/2022) |
| 06/01/2022 | | Attorneys are required by local rule to complete and file both a Civil Cover Sheet and a Designation Form. Defendant's counsel is directed to file Civil Cover Sheet and Designation Form in this case using the Exhibit docket event. (sbt) (Entered: 06/01/2022) |
| 06/01/2022 | 2 | NOTICE of Appearance by SAMANTHA L. SOUTHALL on behalf of GOODLEAP, LLC with Certificate of Service(SOUTHALL, SAMANTHA) (Entered: 06/01/2022) |

7/18/22, 9:47 AM

Case 2:22-cv-02773-RBS   Document 1-1   Filed 07/18/22   Page 4 of 113
United States District Court Eastern District of Pennsylvania

| 06/01/2022 | [3] | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by GOODLEAP, LLC.(SOUTHALL, SAMANTHA) (Entered: 06/01/2022) |
| 06/01/2022 | [4] | EXHIBIT *Civil Cover Sheet* by GOODLEAP, LLC, SUNRUN, INC., VIVINT SOLAR DEVELOPER, LLC, VIVINT SOLAR, INC... (Attachments: # [1] Designation Form) (NEMIROFF, ALEXANDER) (Main Document 4 replaced on 6/1/2022) (sbt). (Entered: 06/01/2022) |
| 06/01/2022 | | Attorneys are required by local rule to complete and file both a Civil Cover Sheet and a Designation Form. Defendant's counsel is directed to file COMPLETED designation form in this case using the Exhibit docket event. (sbt) (Entered: 06/01/2022) |
| 06/01/2022 | [5] | EXHIBIT *Designation Form* by GOODLEAP, LLC, SUNRUN, INC., VIVINT SOLAR DEVELOPER, LLC, VIVINT SOLAR, INC... (NEMIROFF, ALEXANDER) (Entered: 06/01/2022) |
| 06/06/2022 | 6 | Original Record together with certified copy of docket entries received from Court of Common Pleas of Philadelphia County. (ke) (Entered: 06/07/2022) |
| 06/07/2022 | [7] | MOTION to Compel *Arbitration* filed by SUNRUN, INC., VIVINT SOLAR DEVELOPER, LLC, VIVINT SOLAR, INC..Memorandum, Declaration. (Attachments: # [1] Memorandum, # [2] Declaration of Zach Cottman, # [3] Exhibit A, # [4] Exhibit B) (NEMIROFF, ALEXANDER) (Entered: 06/07/2022) |
| 06/07/2022 | [8] | NOTICE of Appearance by JODY T LOPEZ-JACOBS on behalf of GWENDOLYN PURNELL (LOPEZ-JACOBS, JODY) (Entered: 06/07/2022) |
| 06/07/2022 | [9] | NOTICE of Voluntary Dismissal by GWENDOLYN PURNELL (LOPEZ-JACOBS, JODY) (Entered: 06/07/2022) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 07/18/2022 09:46:46 | | |
| PACER Login: | bi0921 | Client Code: | 9999980-000001-SS |
| Description: | Docket Report | Search Criteria: | 2:22-cv-02127-RBS |
| Billable Pages: | 2 | Cost: | 0.20 |

# EXHIBIT B

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**JUNE 2022**

E-Filing Number: 2206037538

**001757**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| GWENDOLYN PURNELL | GOODLEAP, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1827 MORRIS STREET<br>PHILADELPHIA PA 19145 | 8781 SIERRA COLLEGE BLVD.<br>ROSEVILLE CA 95661 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | SUNRUN, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 225 BUSH STREET SUITE1400<br>SAN FRANCISCO CA 94104 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | VIVINT SOLAR, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 225 BUSH STREET SUITE 1400<br>SAN FRANCISCO CA 94104 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 5 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal<br>[ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

CASE TYPE AND CODE

4F - FRAUD

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED
PRO PROTHY**

JUN **17** 2022

**S. RICE**

IS CASE SUBJECT TO
COORDINATION ORDER?
          YES          NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: GWENDOLYN PURNELL

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ANDREW M. MILZ | FLITTER MILZ, P.C.<br>450 N. NARBERTH AVENUE<br>SUITE 101<br>NARBERTH PA 19072 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (610)668-0018 | (610)667-0552 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 207715 | amilz@consumerslaw.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *ANDREW MILZ* | Friday, June 17, 2022, 03:46 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

1. GOODLEAP, LLC
     8781 SIERRA COLLEGE BLVD.
     ROSEVILLE CA 95661
2. SUNRUN, INC.
     225 BUSH STREET SUITE1400
     SAN FRANCISCO CA 94104
3. VIVINT SOLAR, INC.
     225 BUSH STREET SUITE 1400
     SAN FRANCISCO CA 94104
4. VIVINT SOLAR DEVELOPER, INC.
     225 BUSH STREET SUITE 1400
     SAN FRANCISCO CA 94104
5. LEROI TAYLOR
     401 SHARON AVENUE APT. 302
     SHARON HILL PA 19079

COMMUNITY LEGAL SERVICES, INC.
By: PETER D. SCHNEIDER, ESQUIRE
Attorney I.D. No. 40351
By: ROBERT W. BALLENGER, ESQUIRE
Attorney ID No. 93434
1424 Chestnut Street
Philadelphia, PA 19102
Tele: 215-981-3718
Email: pschneider@clsphila.org

FLITTER MILZ, P.C.
BY: CARY L. FLITTER
Attorney ID No. 35047
BY: ANDREW M. MILZ
Attorney ID No. 207715
BY: JODY T. LÓPEZ-JACOBS
Attorney ID No. 320522
450 N. Narberth Ave, Suite 101
Narberth, PA 19072
(610) 822-0782


*Filed and Attested by the
Office of Judicial Records
17 JUN 2022 03:46 pm
S. RICE*

**THIS IS <u>NOT</u> AN ARBITRATION MATTER
AN ASSESSMENT OF DAMAGES HEARING IS REQUIRED**

| | |
|---|---|
| Gwendolyn Purnell<br>1827 Morris Street<br>Philadelphia, PA  19145, | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL DIVISION |
|       Plaintiff, | |
|         v. | Term, 2022 |
| Goodleap, LLC<br>8781 Sierra College Blvd.<br>Roseville, CA  95661, | No. |
| Sunrun, Inc.<br>225 Bush Street, Suite 1400<br>San Francisco, CA 94104, | |
| Vivint Solar, Inc.,<br>225 Bush Street, Suite 1400<br>San Francisco, CA 94104, | |
| Vivint Solar Developer, LLC,<br>225 Bush Street, Suite 1400<br>San Francisco, CA 94104, | |

Leroi Taylor
401 Sharon Ave Apt 302
Sharon Hill, PA 19079

and

John Doe(s),

    Defendants

## COMPLAINT – CIVIL ACTION

| NOTICE TO DEFEND | AVISO |
|---|---|
| You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice arc served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.<br><br>Philadelphia Bar Association<br>Lawyer Referral and Information Service<br>1101 Market Street, 11th Floor<br>Philadelphia, Pennsylvania 191072911<br>Telephone: (215) 238-6333 | Lo(a) han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación.<br>Hace falta asentar una comparecencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.<br><br>LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTEMENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.<br><br>Asociación de Licenciados de Filadelfia<br>Servicio de Referencia E Información Legal<br>1101 Market Street, 11th Floor<br>Philadelphia, Pennsylvania 191072911<br>Teléfono: (215) 238-6333 |

Case ID: 220601757

COMMUNITY LEGAL SERVICES, INC.
By: PETER D. SCHNEIDER, ESQUIRE  Attorneys for Plaintiff Gwendolyn Purnell
Attorney I.D. No. 40351
By: ROBERT W. BALLENGER, ESQUIRE
Attorney I.D. No. 93434
1424 Chestnut Street
Philadelphia, PA 19102
Tele: 215-981-3718
Email: pschneider@clsphila.org

FLITTER MILZ, P.C.
BY: CARY L. FLITTER
Attorney ID No. 35047
BY: ANDREW M. MILZ
Attorney ID No. 207715
BY: JODY T. LÓPEZ-JACOBS
Attorney ID No. 320522
450 N. Narberth Ave, Suite 101
Narberth, PA 19072
(610) 822-0782

**THIS IS <u>NOT</u> AN ARBITRATION MATTER**
**AN ASSESSMENT OF DAMAGES HEARING IS REQUIRED**

| | |
|---|---|
| Gwendolyn Purnell<br>1827 Morris Street<br>Philadelphia, PA  19145,<br><br>  Plaintiff<br><br>   v.<br><br>Goodleap, LLC<br>8781 Sierra College Blvd.<br>Roseville, CA  95661,<br><br>Sunrun Inc.<br>225 Bush Street, Suite 1400<br>San Francisco, CA 94104,<br><br>Vivint Solar, Inc.,<br>225 Bush Street, Suite 1400<br>San Francisco, CA 94104,<br><br>Vivint Solar Developer, LLC,<br>225 Bush Street, Suite 1400 | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL DIVISION<br><br><br>       Term, 2022<br><br>No. |

Case ID: 220601757

San Francisco, CA 94104,

Leroi Taylor
401 Sharon Ave Apt 302
Sharon Hill, PA 19079

and

John Doe(s),

      Defendants

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS TO WHICH SHE IS SO ENTITLED.**

## COMPLAINT – CIVIL ACTION

## PRELIMINARY AVERMENTS

1.      This is an action for declaratory relief and damages for Defendants' violation of Pennsylvania's consumer protection laws and for related torts. The action arises out of an unconscionable and oppressive loan agreement to finance the installation of solar panels on a modest Philadelphia rowhouse owned by Plaintiff Gwendolyn Purnell—a low-income 81-year-old widow residing in South Philadelphia. Defendant Goodleap, then known as Loanpal, working in tandem with door-to-door sales companies Sunrun Inc., Vivint Solar, Inc. and Vivint Solar Developer, LLC ("Vivint"), caused Mrs. Purnell to enter into a solar system contract and loan agreement (collectively, the "contracts") without her knowledge or consent, and without informing her properly of her right to cancel the contract within a three-day period.

2.      When Mrs. Purnell ultimately learned of her right to cancel the contracts and did cancel them, Defendants refused to accept the cancellation and continued to bill Mrs. Purnell for loan installment payments. Then, when Mrs. Purnell, acting within her rights, stopped making payments, Defendant Goodleap threatened to make damaging credit reports and disconnect the

solar panels. Next, it did disconnect the panels. Mrs. Purnell seeks: (a) a declaration that the solar system contract and loan agreements have been cancelled and that she has no further obligations under them; (b) the release of the unilaterally placed UCC Financing Statement, which has clouded her title to the home; (c) actual, treble, and statutory damages for Defendants' unlawful collection actions undertaken in violation of Pennsylvania consumer protection laws, (d) damages for the torts committed when the solar panels were disconnected, and (e) damages for Defendants' fraudulent and deceptive actions.

## PARTIES

3.     Plaintiff Gwendolyn Purnell is a low-income 81-year old widow residing at 1827 Morris Street, Philadelphia, PA 19145 ("the property" or "the home").

4.     Defendant Goodleap, LLC ("Goodleap") is a limited liability corporation licensed to do business as a mortgage lender in Pennsylvania, with a principal place of business at 8781 Sierra College Blvd., Roseville, CA 95661. Goodleap has also operated under the names Loanpal, LLC ("Loanpal") and Paramount Equity Mortgage, LLC ("Paramount") and was known by one or both of those names at the time of some of the events described in this complaint. Any reference in this complaint to "Goodleap," "Loanpal," or "Paramount" is meant to refer to Defendant Goodleap or one of its predecessor entities.

5.     Defendant Sunrun Inc. ("Sunrun") is a corporation engaged, among other things, in the sale and installation of home solar energy systems, with a principal place of business at 225 Bush Street, Suite 1400, San Francisco, CA 94104.

6.     On information and belief, Sunrun is the successor in interest to Vivint Solar, Inc. and Vivint Solar Develop, LLC, which as described below installed a home solar energy system at Mrs. Purnell's home.

7.     Defendant Vivint Solar, Inc. is a corporation incorporated in Delaware and that has a principal place of business in San Francisco, CA.

8.     Defendant Vivint Solar Developer, LLC is a limited liability corporation incorporated in Delaware and that has a principal place of business in San Francisco, CA.

9.     On information and belief, Vivint and Goodleap routinely acted together, and did so here, to sell and finance the sale of solar electric systems.

10.     Defendant Leroi Taylor ("Taylor") is an adult individual who resides in Pennsylvania, with the last known address of 401 Sharon Avenue, Apt 302, Sharon Hill, PA 19079.

11.     Defendant Taylor was the sales agent who at all times relevant acted on behalf of and at the behest of Vivint and Goodleap.

12.     Defendant(s) John Doe is one or more natural persons who at all times relevant acted on behalf of Goodleap.  The identity/identities of Doe will be ascertained through discovery.

13.     Venue lies in this Court, because this action stems from occurrences that took place in Philadelphia County and concerns a UCC Financing Statement recorded in Philadelphia County.

## **FACTUAL AVERMENTS**

14.     Mrs. Purnell has resided in the property since purchasing it in 1970. The property was originally held in the name of Gwendolyn Rispers (Mrs. Purnell's former name) as trustee for her daughter Wanda Rispers, but it has been held by Mrs. Purnell individually since 2005.

15.     Mrs. Purnell's husband David Purnell ("Mr. Purnell") lived in the property with Mrs. Purnell from their marriage in 1987 until his death in 2020.

16.     In 2018, Leroi Taylor, a door-to-door salesman working as an agent for Vivint and Loanpal, solicited Mr. and Mrs. Purnell at their home regarding the installation of solar panels.  At the time, Mr. and Mrs. Purnell had no prior interest in solar, and they told the salesman that they were not interested.

17.     But Taylor continued his pitch, explaining that it would cost nothing and that solar was the future, which intrigued Mr. Purnell in particular.

18.     Although Mrs. Purnell was present for a substantial part of the initial sales presentation, it was Mr. Purnell who had the greater interest and it was to him that Taylor's pitch for solar was largely made.

19.     Taylor told Mr. and Mrs. Purnell that if they allowed Vivint to install solar panels on their roof, there would be no cost to them and they would realize substantial savings on their electric utility costs. Taylor represented that anything Mr. and Mrs. Purnell might have to pay would be covered by the sale to the electric company of the electricity the system generated.

20.     Those representations were false.

21.     Based on those representations, Mr. and Mrs. Purnell agreed to consider having the solar system installed.

22.     Taylor took information for both Mr. and Mrs. Purnell and told them he would submit the information to see if they qualified to have the system installed.

23.     Several weeks later, Taylor returned to the home and told the Purnells that Mr. Purnell did not qualify for the installation of the system but that Mrs. Purnell did so qualify.

24.    Taylor represented again that the installation of the solar system would not cost Mr. and Mrs. Purnell anything.

25.    In reasonable reliance on Taylor's representations that the installation would not cost her anything, Mrs. Purnell orally agreed to have Vivint install the system.

26.    On or about November 28, 2018, Taylor returned again and presented Mrs. Purnell with a computer tablet. There were no paper documents presented, signed, or exchanged, and the computer tablet did not depict any contractual terms.

27.    Mrs. Purnell signed Taylor's tablet, agreeing only to the installation of solar panels and nothing more.

28.    Vivint eventually installed photovoltaic panels and related equipment (collectively, "the solar panels" or "the panels") on her house and connected them to her electric service.

29.    On or about November 6, 2020, well over a year after the panels were installed, Defendants provided copies of documents entitled "Residential Solar Energy System Purchase Agreement," and "Loan Agreement" to Mrs. Purnell.

30.    The "Residential Solar Energy System Purchase Agreement" purported to be an agreement by Mrs. Purnell to purchase solar panels and related equipment from Vivint and for Vivint to install the system, for a price of $18,900.00. A copy, redacted to delete confidential information, is attached hereto as Exhibit "A".

31.    The "Loan Agreement" purported to be a loan from Loanpal to Mrs. Purnell in the total amount of $18,900.00, with a 20-year loan term and an interest rate of 3.99%. The Loan Agreement provided for an initial monthly payment amount of $82.59, but that payment amount

was not fully amortizing. The payment was to reset as of July 27, 2020, to a new, fully amortizing amount estimated at $118.75 for the remaining 18 years of the loan term. The Loan Agreement references, but does not include, a Notice of Cancellation Form.  A copy of the Loan Agreement is attached hereto as Exhibit "B".

32.     Defendants did not present any of these documents to Mrs. Purnell, nor did they provide these documents to Mrs. Purnell in a paper format at any time before, at, or after the loan closing.  Mrs. Purnell did not affix her name on any documents.

33.     Mrs. Purnell believes and avers that the documents were not emailed to her at the time of the initial solicitation.

34.     Mrs. Purnell did not ordinarily use email as a means of communication and she rarely if ever monitored her email address for incoming mail.

35.     At the time of the solicitation, Mrs. Purnell understood that solar panels would be installed but did not understand that she would be taking out a loan to cover the cost of the installation.

36.     If Mrs. Purnell had known or understood that a loan was involved, she never would have agreed to have the system installed.

37.     On information and belief, Defendants' salesman, Taylor, engaged in fraud in the execution, as he misrepresented the very nature of what Mrs. Purnell was agreeing to do in signing the computer tablet.

38.     On information and belief, Defendants, as a matter of policy, do not provide signed contract documents in paper format at the time of signing.

39.     On information and belief, Defendants have a pattern and practice of misrepresenting to consumers the very nature of the transaction, resulting in consumers unwittingly signing decades-long solar contracts, including loans, without their knowledge or consent.

40.     On or about March 6, 2019, Loanpal caused a UCC Financing Statement to be recorded with the City of Philadelphia Department of Records. The secured party's name, as set forth on the Financing Statement, was "Paramount Equity Mortgage, LLC DBA Loanpal." A copy of the Financing Statement, redacted to delete confidential information, is attached hereto as Exhibit "C".

41.     The Financing Statement purported to take a security interest in favor of Loanpal in the following collateral:

> All of the debtor's right, title and interest in the Photovoltaic Solar Energy Equipment or Energy Storage/Battery Equipment (if any), including but not limited to rooftop solar panels, solar roofing materials, wall mounted batteries, inverters, cables and wires, support brackets, roof mounted or ground mounted racking systems, related equipment, and additions or replacements of the same. In addition, the security interest includes all warranties issued with respect to the referenced collateral.

42.     Although the installation of the solar panels reduced Mrs. Purnell's electric utility bills, the net cost of her household electric service increased drastically after the installation of the panels due to the cost of the monthly loan payments due to Loanpal.

43.     As an example of the increased cost:

    a.   The average electric bill for the year from April 2018 through March 2019, before the installation of the solar panels, was $56.14.

b. The average bill from April 2019 through March 2020, after the installation of the panels, was $13.23.

c. That figure represented an average monthly reduction of $42.91 on the electric bill.

d. The reduction was more than offset, however, by the monthly loan payment to Loanpal, initially $82.59 and later, when the loan payment reset, $118.24.

e. Thus the average combined monthly cost associated with electricity service increased as a result of the transactions, initially by $39.68 and later by $75.33.

44.     Pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-7, both Vivint and Loanpal were required to provide Mrs. Purnell with the notice of her right to cancel their respective transactions within three full business days following the day of the transactions.

45.     The UTPCPL, at 73 P.S. § 201-7, sets out the contents and formatting requirements of such a notice.

46.     Neither Vivint nor Loanpal provided Mrs. Purnell with a notice that complied with the above-referenced requirements.

47.     Before November 2020, Mrs. Purnell was never provided with printed copies of a notice of her right to cancel.

48.     Although Vivint and Loanpal may assert, as they have in the past, that they provided such notices to Mrs. Purnell by email at the time of the purported transaction, Mrs.

Purnell believes and avers that no such notices were actually provided, by email or otherwise, at the time of the solicitation.

49.     Copies of the notices provided, redacted to delete confidential information, are attached hereto as Exhibits "D" (Vivint) and "E" (Loanpal).

50.     In any event, the notice Vivint claims to have provided Mrs. Purnell by email failed to comply with the requirements of 73 P.S. § 201-7(2) for the following reasons:

　　　　a.  Mrs. Purnell was not provided with a printed copy or copies of the notice.

　　　　b.  The notice was not easily detachable from the contract.

　　　　c.  The notice was not placed in immediate proximity to the space reserved in the contract for Mrs. Purnell's signature.

　　　　d.  The notice was not in a type size of ten points or greater, as viewable on any device available to Mrs. Purnell.

　　　　e.  The notice was not in bold face type.

51.     The notice Loanpal claims to have provided Mrs. Purnell by email failed to comply with the requirements of 73 P.S. § 201-7(2) for the following reasons:

　　　　a.  Mrs. Purnell was not provided with a printed copy or copies of the notice.

　　　　b.  The notice was not easily detachable from the contract.

　　　　c.  The notice was not provided in duplicate.

　　　　d.  The notice was not placed in immediate proximity to the space reserved in the contract for Mrs. Purnell's signature.

  e. The notice was not in a type size of ten points or greater, whether as

    viewable on any device available to Mrs. Purnell or as printed out.

52. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §

201-7(e), provides that "[t]he cancellation period provided for in this section shall not begin to

run until buyer has been informed of his right to cancel and has been provided with copies of the

'Notice of Cancellation.'"

53. Because the requisite notices had not been provided as of November 5, 2020, the

three-day rescission period had not begun to run, and Mrs. Purnell retained the right to rescind

the transactions with Vivint and Loanpal.

54. On November 9, 2020, Mrs. Purnell's counsel sent Vivint and Loanpal a notice

that Mrs. Purnell had cancelled the transactions. A copy of the notice, redacted to delete

confidential information, is attached hereto as Exhibit "F".

55. The notice was sent within three business days of November 6, 2020.

56. In the notice, counsel advised Vivint and Loanpal as follows:

  Mrs. Purnell hereby makes available to you at her residence in substantially as
  good condition as when received, any goods delivered to her under these
  transactions. Please notify me or Mrs. Purnell whether you intend to repossess or
  to abandon any shipped or delivered goods. If you elect to repossess but do not do
  so twenty days of the date of this notice of cancellation, Mrs. Purnell will retain or
  dispose of the goods without any further obligation.

57. Neither Vivint nor Loanpal responded to the notice.

58. Neither Vivint nor Loanpal ever notified Mrs. Purnell or counsel that they

intended to repossess or abandon any shipped or delivered goods.

59. Pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection

Law, 73 P.S. § 201-7(i), by failing to respond to the notice within ten days and by failing to

Case ID: 220601757

repossess the goods within 20 days, Vivint and Loanpal forfeited all rights to the goods, including the solar panels and associated equipment and the payment of sums pursuant to the Loanpal loan.

60.     As described above, Mrs. Purnell validly cancelled the purported contracts with Vivint and Loanpal.

61.     Nonetheless, Loanpal continued to demand payments from Mrs. Purnell.

62.     Loanpal sent Mrs. Purnell monthly statements claiming that payments were due. Copies of two such statements, redacted to delete confidential information, are attached hereto as Exhibit "G".

63.      Similar statements were sent to Mrs. Purnell each month from September 2019 to sometime in 2021.

64.     Mrs. Purnell continued to make monthly payments to Loanpal until around May 2021.

65.     She did so, notwithstanding having authorized her counsel to cancel the purported loan transaction, in reliance on Loanpal's representations that the payments were still due. She took pride in meeting her obligations and paying her bills on time, so when Loanpal said she owed a payment, she paid it.

66.      The total amount that Mrs. Purnell paid Loanpal after she cancelled the purported loan transaction will be determined through discovery.

67.     Mrs. Purnell stopped making monthly payments in or about May 2021, having come to the understanding that having cancelled the purported loan transaction, she was no longer obligated to make payments.

Case ID: 220601757

68.     Mrs. Purnell then received a notice from Goodleap dated July 15, 2021. A copy of

the notice, redacted to delete confidential information, is attached hereto as Exhibit "H". The

notice stated as follows, in relevant part:

> Your loan is in delinquent status and is near 60 days past due. Immediate action is
> needed to prevent the status from escalating. We are now reporting to credit
> agencies that your payments are past due and will continue to do so until the loan
> is brought current.
> Additional collection actions may be taken soon per your agreement with us.

69.     As a direct result of these threats, and in order to avoid the collection actions

threatened by Goodleap, Mrs. Purnell resumed payment and on or about August 19, 2021 sent

Goodleap $472.96 to bring her account current.

70.     Thereafter, Goodleap discontinued sending monthly statements to Mrs. Purnell,

and Mrs. Purnell again discontinued making payments.

71.     On or about March 16, 2022, Doe, one or more representatives of Goodleap, came

to Mrs. Purnell's home and disconnected the solar panels by placing a lock on the electrical

equipment.

72.     Doe left a letter, a copy of which is attached hereto as Exhibit "I".

73.     The letter stated as follows, in relevant part:

> Goodleap has sent a representative to your property to disconnect your solar
> panels because you are in default of the terms of the Loan Agreement. In the
> event of default, you agreed to allow—Goodleap—or its agent access to the solar
> energy system, for the purpose of deactivating the system.

74.     The letter further threated that "[p]ossible legal action may be taken if your loan is

not brought current in the next 30 days" and that the "UCC lien will remain on the property until

the loan is paid in full."

75.     On or about April 3, 2022, Doe came to Ms. Purnell's home and placed a second lock on the electrical equipment.

76.     As a result of the disconnection of the solar panels that are now rightfully hers, Ms. Purnell no longer benefits from the electric power they can generate.

## <u>COUNT 1: DECLARATORY RELIEF</u>

77.     All previous averments are incorporated herein by reference.

78.     Pursuant to the Declaratory Judgments Act, 42 Pa. C.S.A. § 7531 *et seq.*, courts are empowered to enter declaratory judgments to determine rights, status, and other legal relations including determinations as to the validity of contracts and the rights of parties thereunder.

79.     As described above, Mrs. Purnell cancelled the purported transactions with Vivint and Loanpal by sending them each a notice of cancellation on November 9, 2020.

80.     As described above, neither Vivint nor Loanpal responded to the notice of cancellation within ten days, nor did they repossess the goods within 20 days.

81.     Nonetheless, as described above, both Sunrun and Goodleap have continued to take actions as if the purported transactions had not been cancelled.

**WHEREFORE,** Plaintiff requests that this Court:

    a.   Enter judgment in favor of Plaintiff and against Defendants Goodleap, LLC, Sunrun Inc., Vivint Solar, Inc., and Vivint Solar Developer, LLC.

    b.   Declare that Plaintiff was entitled to, and validly did, cancel the purported contracts with Goodleap, LLC, Sunrun Inc., Vivint Solar, Inc., and Vivint Solar Developer, LLC, and that she has no payment obligation to them.

c.   Award the costs of this action and such other relief as the Court deems

necessary and proper.

## COUNT 2: UNFAIR TRADE PRACTICES

82.   All previous averments are incorporated herein by reference.

83.   The "Residential Solar Energy System Purchase Agreement" and "Loan

Agreement" constitute and reflect the purchase of goods and services primarily for personal,

family or household purposes as defined in the UTPCPL, 73 P.S. § 201-9.2.

84.   Defendants' activities in connection with the sale and installation of the solar

panels and the arranging of a loan to cover the cost of the sale and installation constitute the

conduct of "trade and commerce" as defined in the UTPCPL, 73 P.S. § 201-2.

85.   The goods or services provided by Vivint had a sale price of $18,900.00, which

amount is in excess of $25.00.

86.   Likewise, the goods or services provided by Loanpal had a sale price of

$18,900.00, which amount is in excess of $25.00.

87.   Goodleap is and at all relevant times has been a "creditor" as defined in the

Pennsylvania Fair Credit Extension Uniformity Act ("FCA"), 73 P.S. § 2270.3.

88.   As described above, the goods and services provided by Vivint and Loanpal were

sold or contracted as a result of or in connection with a contact or call on Mr. and Mrs. Purnell at

their residence, either in person or by telephone, within the meaning of the UTPCPL, 73 P.S. §

201-7.

89.   The sales presentation of Sunrun Inc., Vivint Solar, Inc., Vivint Solar Developer,

LLC, and Taylor to Mrs. Purnell, during which these Defendants intentionally misrepresented

Case ID: 220601757

the nature of the transaction and intentionally failed to disclose the existence of a loan,

constituted unfair or deceptive acts or practices under the UTPCPL, 73 P.S. § 201-2(4), which

prohibits, among other things:

    a.   Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services. 73 P.S. § 201-2(4)(ii).

    b.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. 73 P.S. § 201-2(4)(v).

    c.   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201-2(4)(xxi).

90.    Goodleap's actions, as described above, in sending repeated notices demanding

payments that Mrs. Purnell was not responsible to make after having cancelled the purported

loan transaction, and in threatening collection actions if the amounts were not paid, constituted

unfair or deceptive acts or practices under the UTPCPL, 73 P.S. § 201-2(4), which prohibits,

among other things:

    a.   Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services. 73 P.S. § 201-2(4)(ii).

    b.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. 73 P.S. § 201-2(4)(v).

      c.   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201-2(4)(xxi).

91.    Goodleap's actions, as described above, in sending repeated notices demanding payments that Mrs. Purnell was not responsible to make after having cancelled the loan transaction, in threatening collection actions if the amounts were not paid, in threatening to report and in reporting to credit agencies that her payments were past due, and, by and through Doe, in disconnecting the solar panels after Goodleap's security interest in them was cancelled, constituted unfair or deceptive debt collection acts or practices under the FCA, 73 P.S. § 2270.4, which prohibits a creditor from using any false, deceptive, or misleading representation or means in connection with the collection of any debt, or any unfair or unconscionable means to collect or attempt to collect any debt, including, among other things:

      a.   The false representation of the character, amount or legal status of any debt. 73 P.S. § 2270.4(b)(5)(ii).

      b.   The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, attachment or sale of any property of any person unless such action is lawful and the creditor intends to take such action. 73 P.S. § 2270.4(b)(5)(ii).

      c.   The threat to take any action that cannot legally be taken or that is not intended to be taken. 73 P.S. § 2270.4(b)(5)(v).

      d.   Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a debt is disputed. 73 P.S. § 2270.4(b)(5)(viii).

e.  The use of any false representation or deceptive means to collect or
attempt to collect any debt or to obtain information concerning a
consumer. 73 P.S. § 2270.4(b)(5)(x).

f.  Taking or threatening to take any nonjudicial action to effect dispossession
or disablement of property if there is no present right to possession of the
property claimed as collateral through an enforceable security interest. 73
P.S. § 2270.4(b)(6)(vi)(A).

92.  Mrs. Purnell relied upon the deceptive representations of Sunrun Inc., Vivint
Solar, Inc., Vivint Solar Developer, LLC, and Taylor as part of her decision-making process to
go forward with the transaction.

93.  As a result of the unfair and deceptive acts and practices of Sunrun Inc., Vivint
Solar, Inc., Vivint Solar Developer, LLC, and Taylor, Mrs. Purnell has suffered an ascertainable
loss in the amount of the purported loan transaction.

94.  As described above, Mrs. Purnell relied on Goodleap's representations in making
payments to Goodleap after having cancelled the purported loan transaction and later, after
having discontinued payments, in deciding to resume them.

95.  As a result of Goodleap's unfair and deceptive acts and practices, Mrs. Purnell
has suffered an ascertainable loss in the amount of the payments she made to Goodleap after
having cancelled the purported loan transaction.

96.  As a result of Goodleap's unfair and deceptive acts and practices, Mrs. Purnell
has suffered a further ascertainable loss in the reduction in value of her home, reduction in value
of the solar panels affixed to her home, and lost value of the electricity that would otherwise be

generated by such solar panels as a result of Doe's disconnection of the panels, at Goodleap's behest, which rendered them unusable.

97.     In addition, as a result of Goodleap's and Doe's unfair and deceptive acts and practices, Mrs. Purnell has suffered further damages including headaches, nausea, fright, anxiety, emotional distress, depression, and loss of sleep.

98.     Pursuant to the UTPCPL, 73 P.S. §201-9.2, a person who suffers an ascertainable loss of money or property as a result of the use or employment of an unfair or deceptive act or practice prohibited by the Act may bring an action to recover actual damages or $100, whichever is greater, and a Court may, in addition to actual damages, award treble damages, costs and reasonable attorney's fees, and such additional relief as it deems necessary or proper.

99.     Pursuant to 73 P.S. § 2270.5, Goodleap's and Doe's actions in violation of the FCA constitute violations of the UTPCPL.

**WHEREFORE,** Plaintiff requests that this Court:

a.     Award Plaintiff actual and treble damages against Defendants Sunrun Inc., Vivint Solar, Inc., Vivint Solar Developer, LLC, Taylor, Goodleap, and Doe in an amount to be determined at trial.

b.     Award reasonable attorney's fees to Plaintiff's counsel.

c.     Award the costs of this action and such other relief as the Court deems necessary and proper.

## COUNT 3: TRESPASS

100.    All previous averments are incorporated herein by reference.

101.    Goodleap and Doe acted intentionally in disconnecting the solar panels.

102.    Goodleap and Doe did not have Mrs. Purnell's consent to disconnect the solar panels and place locks on the electrical equipment. The contractual provision cited in Goodleap's letter (Exhibit "I") was ineffective because Mrs. Purnell had validly cancelled the purported contract and Goodleap had failed to respond to her notice of cancellation.

103.    By failing to respond to the notice of cancellation within ten days and by failing to notify Mrs. Purnell of its intention to repossess the goods within 20 days, Goodleap forfeited all rights to the goods, including the solar panels and all payment of sums pursuant to the purported loan.

104.    As a result of Goodleap's and Doe's disconnection of the panels, Mrs. Purnell has lost the benefit of the use of the panels. Her electric bill will increase substantially as a result, in an average monthly amount she estimates on information and belief to be $42.91.

105.    In connection with disconnecting the panels, Goodleap and Doe placed two large locks on the Rapid Shutdown Disconnect, depicted on the 3-Line Drawing Vivint submitted to PECO Energy Company in the Interconnection Application/Agreement attached hereto as Exhibit "J".  This equipment is affixed to the front of her home, immediately adjacent to the public sidewalk.

106.    By placing the locks in that location, Goodleap and Doe caused Mrs. Purnell great fear, embarrassment, and emotional distress in that her neighbors and passersby are likely to believe that she is a deadbeat unable to pay her bills.

**WHEREFORE,** Plaintiff requests that this Court:

        a.   Enter judgment in favor of Plaintiff and against Defendants Goodleap and Doe.

b.  Enter an order requiring Defendants Goodleap and Doe to remove the locks and reconnect the solar panels.

c.  In the alternative, award Plaintiff damages against Defendants Goodleap and Doe in the amount necessary for her to engage a qualified individual or organization to remove the locks and reconnect the panels, in an amount to be determined at trial, and order Defendants to take no steps to interfere with the reconnection.

d.  Award actual damages against Defendants Goodleap and Doe to Plaintiff for the loss of use of the panels and for the fear and embarrassment she has suffered, in an amount to be determined at trial.

e.   Award the costs of this action and such other relief as the Court deems necessary and proper.

## COUNT 4: CONVERSION

107.    All previous averments are incorporated herein by reference.

108.    At the time Goodleap and Doe disconnected the solar panels and affixed locks to the associated electrical equipment, Mrs. Purnell was the real and equitable owner of the panels, with exclusive rights to possession.

109.    By failing to respond to the notice of cancellation within ten days and by failing to notify Mrs. Purnell of its intention to repossess the goods within 20 days, Goodleap forfeited any ownership interest in the solar panels and its right to disconnect them.

110.    Goodleap's and Doe's actions in disconnecting the solar panels were intended to deprive Mrs. Purnell of her use of the panels.

111.    Goodleap and Doe disconnected the panels without Mrs. Purnell's consent.

112.    Goodleap's and Doe's actions in disconnecting the solar panels were wrongful, without lawful justification, inconsistent with, and violative of the property rights of Mrs. Purnell.

113.    As a result of Goodleap's and Doe's disconnection of the panels, Mrs. Purnell has lost the benefit of the use of the panels. Her electric bill will increase substantially as a result, in an average monthly amount she estimates on information and belief to be $42.91, for the indefinite future.

114.    In disconnecting the panels, Goodleap and Doe placed two large locks on the Rapid Shutdown Disconnect adjacent to the public sidewalk.

115.    By placing the locks in that location, Goodleap and Doe caused Mrs. Purnell great fear, embarrassment, and emotional distress in that her neighbors and passersby are likely to believe that she is a deadbeat unable to pay her bills.

**WHEREFORE,** Plaintiff requests that this Court:

    a.  Enter judgment in favor of Plaintiff and against Defendants Goodleap and Doe.

    b.  Enter an order requiring Defendants Goodleap and Doe to remove the locks and reconnect the solar panels.

    c.  In the alternative, award Plaintiff damages against Defendants Goodleap and Doe in the amount necessary for her to engage a qualified individual or organization to reconnect the panels, in an amount to be determined at

trial, and order Defendants to take no steps to interfere with the reconnection.

d. Award Plaintiff actual damages against Defendants Goodleap and Doe for the loss of use of the panels and for the fear and embarrassment she has suffered, in an amount to be determined at trial.

e. Award the costs of this action and such other relief as the Court deems necessary and proper.

## COUNT 5: SLANDER OF TITLE

116. All previous averments are incorporated herein by reference.

117. As described above, on March 6, 2019, a UCC Financing Statement was recorded against the property by "Paramount Equity Mortgage, LLC DBA Loanpal," purporting to take a security interest in Mrs. Purnell's title and interest in the solar panels and associated equipment.

118. On information and belief, Goodleap, as successor to or alternative name for Paramount and Loanpal, is the present holder of the UCC Financing Statement.

119. Upon Mrs. Purnell's cancellation of the purported loan transaction and Goodleap's failure to respond to the notice of cancellation, the UCC Financing Statement no longer constituted a lien on the property.

120. Nonetheless, Goodleap failed and refused, after Mrs. Purnell cancelled the purported loan transaction, to release the UCC Financing Statement of record.

121. Goodleap knew or should have known that upon cancellation of the purported loan transaction and the failure to respond to the notice of cancellation, the UCC Financing Statement was no longer valid and must be released of record.

Case ID: 220601757

122.     Goodleap expressly recognized that it was clouding the title of Mrs. Purnell's property when it stated in its letter that the "UCC lien will remain on the property until the loan is paid in full."

123.     The continued existence of record of an unreleased UCC Financing Statement is of a disparaging nature that could foreseeably impair the value of the property in the estimation of others.

124.     As a result of Goodleap's continued failure to release the UCC Financing Statement, Mrs. Purnell has suffered damages, in that the value of her equity in her home is diminished by the amount of the remaining balance of the cancelled loan, the precise amount of which will be determined in discovery.

**WHEREFORE,** Plaintiff requests that this Court:

    a.   Enter judgment in favor of Plaintiff and against Defendant Goodleap.

    b.   Award Plaintiff damages and against Defendant Goodleap in an amount to be determined at trial.

    c.   Award Plaintiff the costs of this action and for such other relief that this Court deems necessary and proper.

## COUNT 6: FRAUD IN THE EXECUTION, FRAUDULENT CONCEALMENT, AND FRAUDULENT NONDISCLOSURE

125.     All previous averments are incorporated herein by reference.

126.     At all times relevant, Leroi Taylor was acting on behalf of and at the behest of Vivint and Goodleap, and the acts, statements, and omissions of Taylor are imputed to those Defendants.

127.   Taylor intentionally misrepresented the nature of the transaction and intentionally failed to disclose the existence of a loan.

128.   At no point did Taylor show any loan documents or paperwork to Mrs. Purnell. This was intentional.

129.   A reasonable and honest person in Taylor's position would have disclosed the nature of the transaction, the existence of a loan, and loan documents.

130.   Mrs. Purnell relied upon Taylor's representations and omissions in agreeing to proceed with the panels.

131.   Because of Taylor's intentional representations and omissions, Mrs. Purnell was prevented from learning about the nature of the transaction until July 2020.

132.   As a result of the representations and omissions of Defendants' agent, Taylor, Mrs. Purnell became obligated to Goodleap without her knowledge or consent, the value of her home has been reduced, and she has experienced headaches, nausea, fright, anxiety, emotional distress, depression, and loss of sleep.

**WHEREFORE,** Plaintiff requests that this Court:

    a.   Enter judgment in favor of Plaintiff and against Defendants Sunrun Inc., Vivint Solar, Inc., Vivint Solar Developer, LLC, Taylor, and Goodleap.

    b.   Award Plaintiff damages and against Defendants Sunrun Inc., Vivint Solar, Inc., Vivint Solar Developer, LLC, Taylor, and Goodleap.

    c.   Award Plaintiff the costs of this action and for such other relief that this Court deems necessary and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS TO WHICH SHE IS SO ENTITLED.**

/s/ Peter D. Schneider
Community Legal Services, Inc.
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3718
Email: pschneider@clsphila.org

/s/ Robert W. Ballenger
Community Legal Services, Inc.
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3788
Email: rballenger@clsphila.org

/s/ Andrew M. Milz
CARY L. FLITTER
ANDREW M. MILZ
JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, PC
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072
(610) 822-0782
amilz@consumerslaw.com
jlopez-jacobs@consumerslaw.com

Attorneys for Plaintiff

Case ID: 220601757

## **VERIFICATION**

I, Gwendolyn Purnell, do hereby verify that the statements made in the foregoing

pleading are true and correct, to the best of my knowledge, information, and belief.  |I understand

that false statements herein made are made subject to the penalties of 18 Pa. C.S. § 4904 relating

to unsworn falsification to authorities.

Date:   June 17, 2022

Gwendolyn Purnell

Case ID: 220601757

# EXHIBIT "A"

Case ID: 220601757



**Vivint Solar Developer, LLC**
1800 W Ashton Blvd, Lehi, UT 84043
help@vivintsolar.com | www.vivintsolar.com
Phone: 877.404.4129 | Fax: 801.765.5758
**The Notice of Cancellation may be sent to this address.**

# Residential Solar Energy System Purchase Agreement

**Customer Name & Contact Information:**

Name(s): Gwendolyn Purnell

Email: gpurne2@aol.com

Primary Phone: 2157559748

Account Number:

**Installation and System Information:**

Installation Location: 1827 Morris St

Philadelphia          PA     19145

System Size: 4.725 kW DC

Approx. Installation Start and Completion Date: 2019-05-27

Date of Customer Signature: 2018-11-28

Sale of Environmental Attributes Opt-In: YES      NO ●

## Contract Price:

| | | |
|---|---|---|
| A | **System Price:** | $ 18,900.00 |
| B | **-Environmental Attribute Credit:** | $ 0.00 |
| C | Total Contract Price: | $ 18,900.00 |

Our Promises:

• We will design and install a solar energy system.

• The system's solar panels carry a 25-year performance warranty, and the inverters carry a minimum 20-year equipment warranty.

• Our work will be free from material defects, and our roof penetrations will be watertight, for 10 years.

• We will fix or pay for any damage we cause to your property or belongings related to installing the system.

• We will make system production information available and provide warranty support for up to 20 years.

Your Commitment:

• Pay us the Total Contract Price as described in Section 2.

• Confirm that you own the property and your roof is in good condition.

• Respond promptly to our sales and support teams when scheduling and completing paperwork.

• Continue service with your utility for any energy you use beyond the system's production.

• Maintain a broadband internet connection so we can make system production information available, and notify us if you sell your property.

Vivint Solar Developer, LLC (EIN: 80-0756438) is a licensed contractor in each state in which we operate Including Pennsylvania, Registration No. HIC-089970, and is also licensed in Pittsburgh, No. EL09849; and Philadelphia, No. EC-28454. For information about our licenses please visit http://www.vivintsolar.com/licenses.

**WE MAY HAVE PRESCREENED YOUR CREDIT. PRESCREENING OF CREDIT DOES NOT IMPACT YOUR CREDIT SCORE.**

**YOU CAN CHOOSE TO STOP RECEIVING "PRESCREENED" OFFERS OF CREDIT FROM US AND OTHER COMPANIES BY CALLING TOLL-FREE 888.567.8688. SEE PRESCREEN & OPT-OUT NOTICE BELOW FOR MORE INFORMATION ABOUT PRESCREENED OFFERS.**

Copyright © 2018 Vivint Solar Developer, LLC. All Rights Reserved.

**Schedule of Progress Payments:**

| Progress Payments | Amount (including applicable sales tax) | Due Date | Payment Options |
|---|---|---|---|
| **Cash Payment** (Paid by Customer) | $ 0.00 | Required to be paid prior to scheduling System installation. | Check or Automatic Payment Deduction (ACH). |
| **Completion Payment** (Amount Financed) | $ 18,900.00 | Becomes due after installation, and must be paid no later than ten (10) days after we receive permission to operate from your utility. | You may contract to pay for all or a portion of the payments above through a Financing Party, as described in Section 2. |

## Your Right to Cancel or Terminate:

The law requires us to inform you that you are free to cancel this Agreement within three business days of the Transaction Date. After those three business days have expired, if you do not wish to proceed then Vivint Solar will allow you to terminate this Agreement before we begin work at or near your Property associated with installation of your System, or work associated with any Ancillary Products Addendum, whichever is earlier.  See Section 9 of the General Provisions for more information.

Copyright © 2018 Vivint Solar Developer, LLC.  All Rights Reserved.

Case ID: 220601757

# Residential Solar Energy System Purchase Agreement

This RESIDENTIAL SOLAR ENERGY SYSTEM PURCHASE AGREEMENT (this "*SPA*"), which includes the General Provisions included further below (the "*GP*"), any Ancillary Products Addendum or Addenda (each, an "*APA*"); any Maintenance Services Agreement ("*MSA*"), any Environmental Attributes Transfer Agreement ("*EATA*"), and any required disclosures including the state-specific disclosures appended here (all of which, together with the SPA, GP, and any APA or MSA, and EATA, collectively, this "*Agreement*"), is entered into as of the last date on the Signature Page below (the "*Transaction Date*"), by and between VIVINT SOLAR DEVELOPER, LLC, a Delaware limited liability company ("*Vivint Solar*", "*Seller*", "*we*", "*us*", "*our*") and the undersigned CUSTOMER(s) ("*Customer*", "*you*", "*your*"). Vivint Solar and you are referred to herein as the "*Parties*", and each, a "*Party*".

## 1. Description of the project and of the significant materials to be used and equipment to be installed.

    (a) Our Work

      **We will design and install a solar energy system.**

    We will survey your home at the address you provided above (the "*Property*") and design a solar energy system (including solar panels, inverters, meters, and other components, the "*System*"). The System may include energy storage, consumption monitoring, and energy management equipment or devices, along with other items as described in one or more APA. All such ancillary products or services will be part of the definition of "System" for purposes of this Agreement, unless designated otherwise. We will provide you a document reflecting the design, layout and basic attributes of the System for you to review and approve (the "*Customer Packet*").

    After you review and approve the Customer Packet and sign this SPA, we will (i) obtain all necessary permits for the installation of the System, (ii) install the System using our qualified and licensed employees or subcontractors in material compliance with all local requirements for building permits, inspections, and zoning, (iii) after installation, work with your municipality to inspect the System, (iv) submit all necessary paperwork to your electric utility provider (the "*Utility*") to receive permission to operate ("*PTO*"), and (v) after receipt of PTO, activate and turn on the System (the "*In-Service Date*"). If we use subcontractors to install the System, we will provide you with their names and license numbers. Subject to the delays of permitting authorities, weather, and other conditions outside our control, installation of the System generally takes one (1) day and is anticipated to start and be complete no later than the Approximate Installation Start and Completion Date described on the first page. We cannot promise or guarantee the date your Utility will provide PTO. YOU ARE NOT ALLOWED TO TURN ON THE SYSTEM UNTIL THE UTILITY HAS GIVEN ITS PERMISSION TO OPERATE. YOU ARE LIABLE FOR ANY COSTS OR DAMAGE RELATING TO YOUR PREMATURE ACTIVATION OF THE SYSTEM. Upon installation of the System, you shall bear risk of loss associated with the System. After payment in full, legal title to the System will transfer to you.

    (b) Extra Work

    You and we must agree in writing to any modification or addition to the work covered by this Agreement ("*Extra Work*"). Extra Work related to the System will be governed by

Copyright © 2018 Vivint Solar Developer, LLC. All Rights Reserved.
Case ID: 220601757

a written change order (each, a "*Change Order*"). Extra Work not directly related to the System, or in addition to the System, shall be governed by an optional APA, and/or an optional MSA. *However*, failure to obtain written authorization shall not affect your obligation to pay for our costs associated with the Extra Work.

Any Change Order shall (i) list the agreed price and any changes in terms, (ii) be signed by both you and us, and (iii) become part of this Agreement. For any Extra Work performed, you shall pay to us an amount to be determined before the Extra Work is performed, plus ten percent (10%) for our overhead expenses, unless the Change Order provides differently. Any payments for Extra Work shall be deemed an increase to the Total Contract Price, and payable to us pursuant to the terms of this Agreement.

### (c) Exclusions from Work

Except as explicitly set forth in this Agreement, we are not responsible for: (i) changes or alterations from this Agreement and the Customer Packet that may be required by applicable law, requirements of government agencies, or your Utility; (ii) correction of an inadequate existing electrical supply or structural components of your Property; (iii) prior unpermitted work at your Property; (iv) any work required due to your Property not complying with current standards or codes; (v) any trenching or excavation required for installation; and (vi) the removal of asbestos or the costs of an investigation to determine whether asbestos is present. Unless expressly set forth in this Agreement, you represent to us that the Property's roofing and electrical systems are adequate for the System and the work to be performed pursuant to this Agreement. Any work necessary to correct or add the above items will be considered Extra Work.

### (d) Discretionary Design Change

We may, in our sole discretion, redesign the System to: (i) exclude one (1) solar module, or its equivalent wattage not to exceed 350 watts, or to increase the size of the system including, without limitation, by installing more solar modules or increased efficiency solar modules whose wattage may exceed those reflected in the Customer Packet, and/or (ii) modify the location of the installation of the System on the roof at the Property without a Change Order.

## 2. Price and Payment



| List Price: | $ 23,625.00 |
| | $ -4,725.00 |
| System Price: | $ 18,900.00 |
| Envir. Attribute Credit: | $ 0.00 |
| **Total Contract Price:** | **$18,900.00** |

You agree to pay us the Total Contract Price plus all applicable taxes, in the amounts and on the dates specified on the Schedule of Progress Payments (shown above ↑ on Page 2).

You may finance the Total Contract Price by entering into a financing agreement with a third party we identify for you (the "*Financing Party*"). If you choose to satisfy your payment obligations hereunder by entering into an arrangement with a Financing Party, you understand that you are directly contracting with such Financing Party and not Vivint Solar. Notwithstanding any arrangement with a Financing Party, you will remain obligated for the full Total Contract Price until we have received full payment.

We make no representation or warranty to you as to the availability, amount, or ability to claim any credits, rebates, incentives, tax benefits, or certificates that are attributed or related to the System or environmental attributes thereof (collectively, the "*System Interests*"). We are not a financial or tax advisor. If you have any questions concerning the System Interests: (i) contact the relevant agency or organization providing the System Interests, and (ii) consult with a financial or tax planning professional.

Copyright © 2018 Vivint Solar Developer, LLC. All Rights Reserved.

Case ID: 220601757

## 3. Customer Obligations

### (a) Your Representations and Warranties

You represent, warrant, and agree that each of the following is true and correct, and will remain true and correct from the Transaction Date through the In-Service Date (the "**Term**"):

    (i)    all information you have provided to us is true, correct, and complete;

    (ii)   you own the Property, including the roof, in fee simple (in other words, you have full and exclusive ownership rights to the Property), or if your Property has been placed into a trust,
you are the trustee;

    (iii)  your roof is in good condition and repair, without material defects, sufficient to support the System;

    (iv)  you are at least eighteen (18) years of age;

    (v)   you have had the opportunity to review and discuss this Agreement with anyone you choose;

    (vi)  if there is more than one person signing this Agreement, each of you is responsible for it (jointly and severally);

    (vii)  you have customary property and liability insurance covering the Property; and

    (viii) you have or will obtain all approvals necessary for us to install the System, including from your home owners association, your mortgage lender, or your insurer.

### (b) Your Property

**At all times, you must keep your roof and home in good condition.**

You are responsible to ensure that your Property (including all electrical systems and the roof) is maintained in good condition and repair and in compliance with all permits, codes, and ordinances. We are not responsible for any existing violations of applicable building regulations or ordinances on your Property. You agree that we are not responsible for any damage or loss to your Property, personal property, fixtures, or other belongings  caused by: (i) snow falling from your roof; (ii) animals or other pests under or near the System; (iii) other natural events or acts of god outside our reasonable control; or (iv) your Property not complying with applicable law. You are required to notify us of any easements, restrictions, or home owners association requirements.

You hereby grant to us the right to access and use your Property to survey your roof and your home's electrical systems, install the System, to enforce our rights under the Agreement, and to take any other action reasonably necessary under this Agreement. The foregoing rights of access to your Property shall constitute a license coupled with an interest and will be irrevocable until the end of the Term and our receipt of payment in full.

### (c) Taxes

**You are responsible for all taxes related to the System and this agreement.**

You are responsible for all taxes assessed on or arising from purchase, installation, or ownership of the System, including all sales (which may be included as part of the Total Contract Price), use, and personal property taxes and real property taxes associated with your Property. Where applicable, you may be eligible for an exemption from any increase to real property taxes on your Property associated with installation of the System.

Copyright © 2018 Vivint Solar Developer, LLC.  All Rights Reserved.

Case ID: 220601757

# 4. Defaults

### (a) Customer Default

You will be in default (i.e., breach) under this Agreement upon the occurrence of any of the following (each, a "**Customer Default**"):

- (i) you fail to make any payment under this Agreement and such failure is not cured within ten

    (10) calendar days of when payment is due;
- (ii) you fail to perform any other obligation under this Agreement and such failure is not cured within thirty (30) days after we give you written notice of such failure;
- (iii) your bankruptcy, insolvency, or admission of your inability to pay your debts as they mature;
- (iv) your Property becomes subject to a foreclosure proceeding; or
- (v) you deny us access to your property or fail to cooperate with us to successfully install the System.

### (b) Default Remedies

Upon a Customer Default, we may exercise any of the following remedies:

- (i) terminate this Agreement and demand you pay the Default Payment, as that term is defined in Section 10 of the General Provisions;
- (ii) disconnect or take back the System as permitted by applicable law;
- (iii) engage a collection agency to collect payments from you;
- (iv) report your default to credit reporting agencies;
- (v) suspend our performance under the Agreement; and/or
- (vi) exercise any other remedy available to us in this Agreement or under applicable law.

Our remedies set forth in this section are cumulative and not exclusive.

### (c) Seller Default

We will be in default (i.e., breach) under this Agreement if we fail to perform any material obligation under this Agreement and the effect of such failure is not cured within thirty (30) days after you give us written notice of such failure ("**Seller Default**").

If a Seller Default occurs and is continuing, you may terminate this Agreement and request removal of the System from your Property. Upon a Seller Default, we will refund to you the Total Contract Price less all costs we have incurred. You have no right to claim damages as a result of the termination of this Agreement, except for the actual costs to remove the System (if we fail to remove the System), and any damages to your Property that we cause in connection with removal of the System.

Copyright © 2018 Vivint Solar Developer, LLC.  All Rights Reserved.

Case ID: 220601757

## Residential Solar Energy System Purchase Agreement – General Provisions

These GENERAL PROVISIONS (the "*GP*"), shall be interpreted with, and incorporated by reference in, the Residential Solar Energy System Purchase Agreement (the "*SPA*") and any Ancillary Products Addenda (each, an "*APA*") between you and Vivint Solar Developer, LLC, and any Maintenance Services Agreement (the "*MSA*") between you and Vivint Solar Provider, LLC, each of which shall be governed, as applicable, by this GP. Capitalized terms in this GP not otherwise defined shall have the meaning given them in the SPA.

The SPA, this GP, and any APA, MSA or EATA, along with the Customer Packet, any Change Orders, and any amendments or addenda between you and any Vivint Solar entity shall be considered part of one transaction (the "*Agreement*").

## 1. Payment

As set forth above in Section 2 of the SPA, you may finance the Total Contract Price by entering into a financing agreement with a Financing Party. If you choose to pay the Total Contract Price by entering into an arrangement with a Financing Party, you understand that you are directly contracting with such Financing Party and not Vivint Solar. You also understand that you will remain obligated to pay the Total Contract Price until we have received full payment.

## 2. Governing Law

This Agreement, and any instrument or agreement required hereunder, shall be governed by, and construed under, the internal laws of the state where the Property is located.

## 3. Limitation of Liability

Notwithstanding any breach of this agreement, any failure of the system, or any negligent act that caused any injury or loss (whether property damage, personal injury, or death) to anyone, to the fullest extent permitted by applicable law, we and you agree that, unless such injury or loss was caused by a party's gross negligence, fraud, willful injury, or violations of law, such party's liability arising out of or relating to (1) system repairs or replacement under this agreement, shall in no event exceed the default payment, and (2) damage to persons and property, shall in no event exceed $2,000,000. You and we agree that this amount is a fair representation of the damages that you or we expect to incur in the case of any injury or loss hereunder. To the fullest extent permitted by applicable law, neither you nor we may bring a claim against the other party or such party's affiliates, owners, directors, employees, agents, contractors, or successors and assigns (collectively, the "related parties") for any special, exemplary, indirect, incidental, consequential, or punitive damages (whether or not the claim therefore is based on contract, tort, duty imposed by law, or otherwise), in connection with, arising out of, or in any way related to the transactions contemplated by this agreement or any act or omission or event occurring in connection therewith. You further agree that no claim, lawsuit, or any other legal or arbitration proceeding in connection with, arising out of, or in any way related to this agreement may be brought more than one (1) year after the incident giving rise to such claim, or as limited by applicable law.

Copyright © 2018 Vivint Solar Developer, LLC. All Rights Reserved.

Case ID: 220601757

## 4. Indemnification

To the fullest extent permitted by applicable law, you agree to indemnify, advance expenses, and hold harmless us and our Related Parties from any and all claims, actions, costs, expenses (including reasonable attorneys' fees and expenses), damages, liabilities, penalties, losses, obligations, injuries, demands, and liens of any kind or nature in connection with, arising out of, or in any way related to your breach of this Agreement, or your negligence or willful misconduct. Your indemnification obligations under this section shall not apply if the harm or damage that is the basis for such claim occurred while one of our employees or agents was at your Property and such harm or damage was caused by the negligence or willful misconduct of such employee or agent.

## 5. Arbitration of Disputes and Class Waiver

Unless prohibited by applicable law and unless you opt out, you and we agree that any Party may elect to arbitrate or require arbitration of any Dispute (as defined below). You also agree to bring claims against us only in your individual capacity and YOU ARE WAIVING THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.

**What is arbitration**? *An alternative to a court case*. In arbitration, a third party arbitrator ("*TPA*") solves "Disputes" in a hearing. It is less formal than a court case.

**Is it different from court and jury trials?** *Yes*. The hearing is private. There is no jury. It is usually less formal, faster and less expensive than a lawsuit. Pre-hearing fact finding (called "discovery") is limited. Appeals are limited. The arbitrator's findings are binding, and courts rarely overturn arbitration awards.

**Who does this cover**? *You, us, and certain Related Parties* (defined above). Either you or we may, without the other's consent, elect to resolve disputes by mandatory, binding arbitration.

**What Disputes does this cover?** *All Disputes (except certain Disputes about this Clause)*. This governs all disputes that would usually be decided in court and are between us (or any Related Party) and you, including without limitation all claims related to this Agreement, the System or our relationship with you ("*Disputes*"). Disputes include claims related to amendments, Change Orders, APAs and MSAs, collections, privacy and Customer Information, and claims related to the validity of this Agreement AND THE ARBITRABILITY OF ANY DISPUTE(S). In short, Disputes has the broadest reasonable meaning.

**Who handles the arbitration?** *JAMS*. The arbitration company will be JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.org.

**What are the rules of the arbitration?** *Those in this Clause along with the JAMS Rules*.

Arbitrations are conducted under this Clause and the JAMS Streamlined Arbitration Rules and Procedures in effect at the time the arbitration is commenced. This Agreement is also subject to the JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses and Minimum Standards of Procedural Fairness, which set forth certain protections to you (including a maximum filing fee). Any other arbitration rules that conflict with this Clause do not apply.

**Can Disputes be brought in court?** *Sometimes*. Either party may bring a lawsuit if the other party does not demand arbitration. We will not demand arbitration of any lawsuit you bring as an individual action in small-claims court.

**Where will the arbitration hearing be held?** *In your hometown area*. You can find more information in the JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness, which is available here - https://www.jamsadr.com/consumer-minimum- standards.

Copyright © 2018 Vivint Solar Developer, LLC. All Rights Reserved.
Case ID: 220601757

**Are you giving up any rights?** *Yes*. For Disputes subject to this Clause, you give up your right to:
- have juries decide Disputes;
- have courts, other than small-claims courts, decide Disputes;
- serve as a private attorney general or in a representative capacity;
- join a Dispute you have with a dispute by other consumers;
- bring or be a class member in a class action or class arbitration; and
- a jury trial and to have courts decide Disputes you wish to arbitrate.

**Can you or another consumer start class arbitration?** *No*. JAMS is not allowed to handle any Dispute on a class or representative basis. All Disputes subject to this Clause must be decided in an INDIVIDUAL arbitration or an individual small-claims action. This Clause will be void if a court rules that the TPA can decide a Dispute on a class basis and the court's ruling is not reversed on appeal.

**What law applies?** *The Federal Arbitration Act ("FAA")*. This Agreement involves interstate commerce. THUS, the FAA governs this Clause. The TPA must apply substantive law consistent with the FAA. The TPA must honor statutes of limitation and privilege rights. Punitive damages are governed by the constitutional standards that apply in judicial proceedings.

**Will anything I do make this Clause ineffective?** *No*. This Clause stays in force even if you: (1) cancel this Agreement; (2) default, renew, prepay or pay the Agreement in full; or (3) go into or through bankruptcy.

# 6. Force Majeure

If either you or we are unable to perform any obligation under this Agreement because of a Force Majeure Event, such affected Party will be excused from performance affected by such Force Majeure Event. "*Force Majeure Event*" shall mean any event, condition, or circumstance beyond the control of the affected Party which, by the exercise of due foresight, such Party could not reasonably have been expected to avoid, and is unable to overcome, including, *but not limited to*, action or inaction by a governmental authority or Utility or failure to obtain or maintain a permit, license, consent, or approval (provided that such action has been timely requested and diligently pursued), labor dispute, flood, earthquake, volcano, fire, lightning, wind, war, act of god, unavailability of electricity from the Utility, equipment, supplies of products, power surge caused by someone other than the affected Party, or failure of equipment not under the control of the affected Party. In no event shall a Force Majeure Event excuse you from any of your payment obligations under this Agreement.

# 7. Amendments and Waivers

This Agreement (including all exhibits and notices attached hereto) may only be amended or modified by an instrument in writing signed by both you and us.

# 8. Entire Agreement

This Agreement constitutes the entire agreement between you and us, and supersedes all prior oral and written communications relating hereto. If you sign an SPA, APA, MSA after the Transaction Date relating to the same Property and System, the later-signed SPA, APA or MSA shall supersede and replace the prior-signed SPA, APA or MSA, respectively, in its entirety, and any other agreement, amendment or addendum will modify the specific agreement or agreements it is intended to modify, according to its terms. For the avoidance of doubt, a later-signed SPA supersedes and replaces a prior- signed SPA, a later-signed APA supersedes and replaces a prior-signed APA, and a later-signed MSA supersedes and replaces a prior-signed MSA.

Copyright © 2018 Vivint Solar Developer, LLC. All Rights Reserved.

Case ID: 220601757

## 9. Termination

(a) Your Termination Rights. **You may terminate the Agreement after your right to cancel under the Notice of Cancellation has expired if: (i) a Seller Default has occurred as set forth in** Section 4(c) **of the SPA; or (ii) you inform us in writing of your desire to terminate, by the same method set forth for cancellation, before the earlier of commencement of work at or near your property associated with installation of the System, or commencement of work associated with an APA or MSA. Depending on the products or services, the APA or MSA may require that you pay a termination fee (the "*Termination Fee*"). Consult the APA or MSA for more details.**

(b) Our Termination Rights. **We may terminate this Agreement prior to commencement of installation work by delivering written notice of termination to you.**

(c) Consequences of Termination. **Unless we transfer the System to you, we will remove the System, if it has been installed, within ninety (90) days after any termination or cancellation of this Agreement. If we elect to terminate this Agreement, we will have no further liability to you, and will refund any amounts you have paid.**

## 10. Default Payments

If this Agreement is terminated for any reason, other than if this Agreement is cancelled pursuant to the Notice of Cancellation, terminated pursuant to Section 9, above, or terminated due to a Seller Default, you agree to pay us an amount equal to the sum of the Contract Price, any other amounts you owe us, our reasonable attorney's fees, and our other costs and losses, less any amounts you have paid (collectively, the "*Default Payment*"). YOU AGREE THAT THE DEFAULT PAYMENT FAIRLY REFLECTS THE VALUE OF THE SYSTEM AND IS A FAIR REPRESENTATION OF THE DAMAGES AND LOSSES THAT WE MAY INCUR AS A RESULT OF A CUSTOMER DEFAULT.

## 11. Data concerning you, the System, and your Property

We may collect and store: nonpublic personal information about you, the System, your energy usage, your credit report, and other related information; and may install, operate, and maintain a device on your Property that we may use to collect and store information about your energy use and related information (collectively, "*Data*"). We may use any software related to operation of the System. We may use Data and access software to measure performance of the System. You agree that we may use, store, and disclose the Data to our assignees, affiliates, actual or prospective lenders, financing parties, investors, insurers, acquirers, along with equipment manufacturers and suppliers associated with your System. We will use certain administrative, physical and technical safeguards to maintain the integrity and security of Data we obtain and control. However, it is possible that other persons will access Data despite our efforts. So long as no Customer Default has occurred or is continuing under the Agreement, we will make certain Data available to you via the Vivint Solar Account Center, available at https://account.vivintsolar.com.

You agree that we may share your name, contact information, Property location, and other information we have collected or obtained about you, including the Data ("Customer Information") with our affiliates (including Vivint Inc. and its affiliates). You authorize us, our affiliates, and others that may act on our behalf to make calls and send SMS text messages to you for marketing and other business purposes. You may opt-out of receiving marketing communications by calling or emailing our customer service department at help@vivintsolar.com.

## 12. Our Transfer

We may assign, sell, or transfer (in whole or in part) this Agreement without your consent and without notice. If an assignee agrees in writing to assume all of our rights and obligations under this Agreement, we will have no further liability or obligation to you upon the effective date of such assignment.

## 13. Binding Effect

This Agreement shall be binding upon and benefit you and us and our and your respective legal representatives, successors, and permitted assigns. Except as expressly provided in this Agreement, you may not assign this Agreement (or any of your obligations or rights under it) without our prior written and signed consent. Any purported

Copyright © 2018 Vivint Solar Developer, LLC All Rights Reserved.

Case ID: 220601757

assignment by you without our prior written and signed consent shall be null and void.

## 14. Survival

After termination or expiration of this Agreement, any provisions which by their nature are intended to survive such termination or cancellation shall survive.

## 15. Severability

If any provision of this Agreement is held to be invalid, prohibited, voidable, or otherwise unenforceable by an arbitrator or court of competent jurisdiction, this Agreement shall be considered divisible and such provision shall be deemed inoperative to the extent it is deemed invalid, prohibited, voidable, or unenforceable, and in all other respects this Agreement shall remain in full force and effect; provided, however, that if any such provision may be made enforceable by limitation thereof, then such provision shall be deemed to be so limited and shall be enforceable to the maximum extent permitted by applicable law.

## 16. Counterparts

This Agreement may be executed in one or more counterparts, and all such counterparts shall be deemed to constitute one instrument. A facsimile or portable document format ("pdf") shall constitute an original for purposes hereof.

## 17. Publicity

You agree and hereby authorize us to use your and your Property's voice, photograph, video, and likeness in print media, radio, television, e-mail, social media, web materials, and any audio or video recording. We will not disclose your personally identifying information (except as provided in Section 11).

## 18. System Hazards

The System may contain hazardous materials, which could pose dangers related, but not limited, to health hazards, fire hazards, high-voltage hazards, mechanical damage, severe personal injury and even death. Please consult the manufacturer's user's manual and warranty materials for handling and operation information, as well as guidance on proper disposal.

## 19. Autodialed Telephone Calls and Text Messages

You consent to receive autodialed telephone calls and SMS text messages from us, our affiliates, our contractors, or on our behalf at the mobile telephone number provided below. These telephone calls and SMS text messages may include promotional material related to our services or others' products and services, which may be sent using an automatic telephone dialing system. You understand that you are not required to agree to receive telephone calls or SMS text messages as a condition of entering into this Agreement. Standard call and text message charges may apply from your wireless provider.

## 20. Credit Authorization

In connection with the execution of this Agreement and at any time during the Term, you agree that we may (a) obtain your credit rating and consumer report from credit reporting agencies; (b) report your payment performance to credit reporting agencies; and (c) disclose this and other information to our assignees, affiliates, actual or prospective lenders, financing parties, investors, insurers, and acquirers.

## 21. Warranties

(a) Our Limited Warranty. Unless provided otherwise in your state-specific disclosures at the end of this document, we will warranty all of our work associated with installation of the System (but not including any work performed or equipment installed under any APA), as follows:

(i) unless the System is installed on a tar-and-gravel or built-up roof, then the System will be free from material

Copyright © 2018 Vivint Solar Developer, LLC All Rights Reserved.

SPA (3/2018, v4.C) – Page

defects that we cause in workmanship, and any rooftop penetrations we make in connection with installation will  be watertight, for ten (10) years after installation is completed;

(ii) if the System is installed on a tar-and-gravel or built-up roof, then the  System  will  be  free  from  material defects that we cause in workmanship for ten (10) years after installation, and the roof will be free from damage we cause that results in  a roof leak for twelve (12) months after installation.

To make a claim, please contact us at help@vivintsolar.com or 877.404.4129. This warranty gives you specific legal rights, and you may have other rights which vary from state-to-state.

(b) Manufacturer Warranties. We do not provide any warranty with respect to any component of the System. Any manufacturer's warranty is in addition to, not in lieu of, the limited warranties described above. The System's solar panels carry a minimum manufacturer's warranty that: (1) during the first ten (10) years of use, the modules' electrical output will not degrade by more than ten percent (10%) from the originally rated output; and (2) during the first twenty-five (25) years of use, the modules' electrical output will not degrade by more than twenty percent (20%) from the originally rated output. The inverters that convert the solar energy produced by the panels from variable direct current (DC) into a utility frequency alternating current (AC) carry a minimum twenty (20) year equipment warranty.

(c) Warranty Exclusions. The limited warranties set forth above in Section 21(a) do not cover problems resulting from: (i) your acts or omissions, including your failure to abide by the terms of this Agreement; (ii) exposure to harmful materials and chemicals; (iii) any Force Majeure Event (as such term is defined above); (iv) vandalism, theft, or tampering with the System by anyone; (v) damage caused by hail or ball strikes; and (vi) any other cause beyond our reasonable control. Our warranty and maintenance obligations may be transferred to a third party. If you have elected not to purchase an optional MSA, you may be billed for onsite diagnostic and/or maintenance services that are not covered by the limited warranties set forth above.

(d) Administrative Support Services.  So long as you comply with this agreement, beginning at the In-Service Date and continuing for twenty (20) years  thereafter (the "*Administrative Services Term*"), we will perform the following administrative and warranty support services (the "*Administrative Services*"):

(i)  We will make information about the production of your System available to you at account.vivintsolar.com.

(ii) To the extent that manufacturer warranties cover replacement and repair of equipment used in a System during the Administrative Services Term, we shall use commercially reasonable efforts to process and submit warranty claims on your behalf.

You agree to provide the System with continuous access and connection to a functioning broadband connection at your cost throughout the Administrative Services Term.  You also agree to notify us at least thirty (30) days prior to any sale or transfer of your Property.

THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION OF THE FACE HEREOF. EXCEPT AS SET FORTH IN THIS SECTION 21, AND TO  THE  FULLEST  EXTENT  PERMITTED  UNDER  APPLICABLE  LAW,  WE MAKE  NO OTHER WARRANTY TO YOU OR ANY OTHER PERSON, WHETHER EXPRESS, IMPLIED, OR STATUTORY; AS  TO      THE MERCHANTABILITY  OR  FITNESS  FOR  ANY  PURPOSE  OF  THE   EQUIPMENT,   INSTALLATION, DESIGN,  OPERATION,  OR  MAINTENANCE  OF  THE  SYSTEM;  THE  PRODUCTION  OR  DELIVERY  OF  ENERGY; OR  ANY  OTHER   ASSOCIATED  SERVICE  OR  MATTER  HEREUNDER,  ALL  OF  WHICH  WE  HEREBY  EXPRESSLY DISCLAIM.  TO  THE  EXTENT  THAT  ANY  IMPLIED  WARRANTY  MAY  NOT  BE  DISCLAIMED  UNDER  APPLICABLE LAW,  SUCH   IMPLIED  WARRANTY  SHALL  BE  OF  A  DURATION  NO  GREATER  THAN  THAT  OF  THE   LIMITED WARRANTY  SET  FORTH IN THIS SECTION. SOME STATES DO NOT ALLOW  LIMITATIONS  ON  HOW  LONG  AN IMPLIED  WARRANTY  LASTS,  SO  THE  ABOVE  LIMITATION  MAY  NOT  APPLY  TO  YOU.  TO  THE  FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, OUR LIABILITY FOR ANY BREACH OF ANY WARRANTY IS LIMITED TO REPAIRING THE SYSTEM OR YOUR PROPERTY TO THE EXTENT REQUIRED UNDER THIS AGREEMENT. YOU ACKNOWLEDGE THAT WE ARE RELYING ON THIS AS A CONDITION AND  MATERIAL  INDUCEMENT  TO  ENTER INTO THIS AGREEMENT.

Copyright © 2018 Vivint Solar Developer, LLC All Rights Reserved.

## 22. Disconnection

There may be circumstances where we are required to turn off or disconnect the System due to requirements of the Utility or government authority or conditions on your Property that may affect the safe operation of the System.

## 23. Our Insurance

(a) Commercial General Liability Insurance (CGL). As of the Transaction Date, Vivint Solar Developer, LLC and our affiliates carry commercial general liability insurance written by Axis Specialty Europe (Policy No. 3776500116EN) in the amount of $1,000,000 per occurrence. You may call Axis at 353.632.5900 to check our insurance coverage, or visit www.vivintsolar.com/insurance.

(b) Workers' Compensation Insurance. As of the Transaction Date, Vivint Solar Developer, LLC and our affiliates carry workers' compensation insurance for all employees written by Zurich American Insurance Company (NAIC #: 16535) and American Zurich Insurance Company (NAIC No.: 40142) in the amount of $1,000,000 per occurrence. You may call  Zurich American Insurance Company and American Zurich Insurance Company at 800.382.2150 to check our insurance coverage, www.vivintsolar.com/insurance.

(c) Property Insurance. As of the Transaction Date, Vivint Solar Developer, LLC and their affiliates carry property insurance for all Vivint Solar properties written by GCube and Travelers - Lloyds Shared Program (Policy No. P16GR00830) in the amount of $1,000,000 for occurrences during installation. You may call  Diversified  Insurance Company  at  801.325.5000 to check our insurance coverage, www.vivintsolar.com/insurance.

## 24. Incentives and Tax Credits

As the purchaser and owner of a solar photovoltaic system, you may qualify for certain federal, state, local or other rebates, tax credits or incentives (collectively, "*Incentives*"). If you have any questions as to whether you qualify for any Incentives, please consult with your personal tax or financial advisor.

Under Section 25D of Title 26 of the United States Code, the federal government allows certain taxpayers to claim a credit for "qualified solar electric property expenditures" made by taxpayers during the applicable tax year a qualified  system is placed in  service (i.e., after your System is ready and available for use and after the Utility has granted you PTO). In addition, systems that incorporate storage technology that are  charged by a renewable energy system may be eligible for this Incentive under certain circumstances. For more information, generally, regarding this Incentive, please visit: http://energy.gov/savings/residential-renewable- energy-tax-credit. For more information about how the Incentive may apply to a battery storage system, please visit: www.nrel.gov/docs/fy17osti/67558.pdf. To access the applicable IRS form used to claim this Incentive in years' past, please visit http://www.irs.gov/uac/Form-5695,- Residential-Energy-Credits.

## 25. Prescreen and Opt-out Notice

This "prescreened" offer of credit is based on information in your credit report indicating that you meet  certain criteria. This offer is not guaranteed if you do not meet our criteria. If you do not want to receive prescreened offers of credit from us and other companies, call  the consumer reporting agencies toll-free,  888.567.8688;  or write: Experian Opt Out, DMA Mail Preference Service, P.O. Box 643, Carmel, NY 10512; Transunion Opt  Out  Request, P.O. Box 505 Woodlyn, PA 19094; Equifax Information   Services,   LLC,   P.O.   Box   740123   Atlanta,   GA   30374-0123,   or   visit www.optoutprescreen.com.

Copyright © 2018 Vivint Solar Developer, LLC All Rights Reserved.

Case ID: 220601757

## 26. Electronic Records and Acknowledgment of General Provisions

You may be entitled by law to receive certain information "in writing". However, you agree that all information, documents, disclosures, notices, and agreements between you and us will be in electronic form (collectively, "*Electronic Records*"). You further agree that we may use and obtain from you electronic signatures (such as by clicking, checking, or signing using a digital pen) in the processing of Electronic Records. We will provide the Electronic Records to you by emailing them to you at the most recent e-mail address that we have on file and/or by making Electronic Records available to you at account.vivintsolar.com. You must notify us of any change in your e-mail address. If we send an Electronic Record to you, but you do not receive it because the most recent e-mail address that we have on file for you is incorrect, out of date, blocked by your service provider, filtered by your service provider as "spam" or "junk mail", or you are otherwise unable to receive the Electronic Record, we will be deemed to have provided the Electronic Record to you. You must have a computer with an Internet connection, a compatible web browser, Adobe Acrobat Reader version 8.0 and above, and a valid and accessible e-mail account. You may request a paper copy of any Electronic Record, and we will send your paper copy to you via U.S. mail within ninety (90) days. You may opt-out of receiving Electronic Records by calling or emailing our customer service department at help@vivintsolar.com.

✓   BY CHECKING THIS BOX, YOU AGREE TO RECEIVE DISCLOSURES FROM US ELECTRONICALLY, OTHERWISE AGREE AND ACKNOWLEDGE THAT YOU HAVE REVIEWED THESE GENERAL PROVISIONS AS DESCRIBED IN <u>SECTION 26</u>, AND AGREE THIS CHECKBOX CONSTITUTES YOUR ELECTRONIC SIGNATURE.

BY CHECKING THIS BOX, YOU AGREE TO ARBITRATE AND WAIVE THE RIGHT TO A JURY TRIAL AS DESCRIBED IN <u>SECTION 5</u>, AND AGREE THIS CHECKBOX CONSTITUTES YOUR ELECTRONIC SIGNATURE. [<u>Do not initial if you live in Pennsylvania, and see below instead</u>]

BY CHECKING THIS BOX, YOU AGREE AND OPT-IN TO RECEIVING TELEPHONE CALLS AND TEXT MESSAGES AT THE FOLLOWING TELEPHONE NUMBER 2157559748 AS DESCRIBED IN <u>SECTION 19</u>, AND AGREE THIS CHECKBOX CONSTITUTES YOUR ELECTRONIC SIGNATURE.

✓   BY CHECKING THIS BOX, YOU AGREE THAT WE MAY SHARE INFORMATION ABOUT YOU WITH OUR AFFILIATES, AND THAT OUR AFFILIATES MAY CONTACT YOU AS DESCRIBED IN <u>SECTION 11</u>, AND AGREE THIS CHECKBOX CONSTITUTES YOUR ELECTRONIC SIGNATURE.

[SIGNATURE PAGE FOLLOWS]

Copyright © 2018 Vivint Solar Developer, LLC All Rights Reserved.

## Signature Page and Notice to Customer(s)

A. LIST OF DOCUMENTS TO BE INCORPORATED INTO THE CONTRACT. These documents are incorporated into this Agreement and apply to the relationship between you and us: (i) Residential Solar Energy System Purchase Agreement, (ii) General Provisions, (iii) Customer Packet; (iv) Maintenance Services Agreement, as applicable; and (v) Ancillary Products Addenda, as applicable.

✓ BY CHECKING THIS BOX, YOU ACKNOWLEDGE RECEIPT OF THE CUSTOMER PACKET, AND APPROVE THE SYSTEM IT DEPICTS, AND AGREE THIS CHECKBOX CONSTITUTES YOUR ELECTRONIC SIGNATURE.

B. WE HAVE NOT GUARANTEED, PROMISED OR OTHERWISE REPRESENTED ANY REDUCTION IN ELECTRICITY COSTS IN RELATION TO THE SYSTEM THAT WILL BE INSTALLED ON YOUR PROPERTY.

C. IT IS NOT LEGAL FOR US TO ENTER YOUR PREMISES UNLAWFULLY OR COMMIT ANY BREACH OF THE PEACE TO REMOVE GOODS INSTALLED UNDER THIS AGREEMENT.

D. CUSTOMER'S RIGHT TO CANCEL. YOU, THE BUYER, MAY CANCEL THIS CONTRACT AT ANY TIME BEFORE MIDNIGHT OF THE THIRD (3RD) BUSINESS DAY AFTER THE TRANSACTION DATE. SEE THE ATTACHED NOTICE OF CANCELLATION FOR AN EXPLANATION OF THIS RIGHT. DO NOT SIGN BELOW UNLESS WE HAVE GIVEN YOU THE "NOTICE OF CANCELLATION".

E. IF YOU DO NOT WISH TO PROCEED AFTER YOUR RIGHT TO CANCEL HAS EXPIRED THEN VIVINT SOLAR WILL ALLOW YOU TO TERMINATE THIS AGREEMENT BEFORE WE BEGIN WORK AT OR NEAR YOUR PROPERTY ASSOCIATED WITH INSTALLATION OF YOUR SYSTEM, OR WORK ASSOCIATED WITH ANY ANCILLARY PRODUCTS ADDENDUM, WHICHEVER IS EARLIER. SEE SECTION 9 OF THE GENERAL PROVISIONS FOR MORE INFORMATION.

F. YOU RISK THE LOSS OF ANY PAYMENTS MADE TO A SALES REPRESENTATIVE.

G. DO NOT SIGN THIS AGREEMENT IF THIS AGREEMENT CONTAINS ANY BLANK SPACES. You are entitled to a completely filled in copy of this Agreement, signed by both you and us, before any work may be started.

| REPRESENTATIVE: | | CUSTOMER(S): | |
|---|---|---|---|
| Signature: | | Signature: | *Gwendolyn Purcell* |
| Printed Name: | Leroi Taylor | | |
| Salesperson No.: | | Printed Name: | Gwendolyn Purnell |
| Date: | 2018-11-28 | Date: | 2018-11-28 |

FOR OFFICE USE ONLY

THIS AGREEMENT IS NOT EFFECTIVE NOR BINDING UPON VIVINT SOLAR DEVELOPER, LLC UNTIL SIGNED BY AN AUTHORIZED REPRESENTATIVE.

VIVINT SOLAR DEVELOPER, LLC   *Casey Green*

| Signature: | |
|---|---|
| Printed Name: | Casey Green |
| Date: | 2018-11-29 |
| Processing No: | ▮ |

Copyright © 2018 Vivint Solar Developer, LLC All Rights Reserved.

Case ID: 220601757

# EXHIBIT "B"

Case ID: 220601757

DocuSign Envelope ID: C807AB69-7755-4934-A2A5-98037C9A95D9

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**LOANPAL**
8781 Sierra College Blvd, Roseville, CA 95661   Phone: 1-877-290-9991

## Loan Agreement

**Borrower:** Gwendolyn Purnell
**Co-Borrower:**
**Email:** gpurne2@aol.com
**Phone:** (215) 755-9748
**Effective Date:** November 28, 2018

**Residence Address:** 1827 Morris St
Philadelphia, PA
19145

This document provides a Summary of the terms and conditions of your Loan.

### SUMMARY OF LOAN TERMS AND PAYMENTS

| 20 YEARS | $18,900.00 | $82.59 (e) | 3.99 % | $12,951.22 (e) | 07/27/2020 (e) | $118.75 (e) |
|---|---|---|---|---|---|---|
| LOAN TERM | TOTAL LOAN AMOUNT | INITIAL MONTHLY PAYMENT | FIXED INTEREST RATE | TARGET BALANCE | TARGET BALANCE DATE | ADJUSTED MONTHLY PAYMENT* |

(e) means estimate
* Adjusted monthly payment assumes that no prepayment was made and the Target Balance was not met by the Target Balance Date

### SYSTEM INFORMATION

Installation Contractor: Vivint Solar Developer, LLC

* Purchased Goods under this Loan Agreement will be detailed in your Home Improvement Agreement.  By initialing below, you confirm receipt of such Home Improvement Agreement.

**Borrower's Initials:** _GP_         **Co-Borrower's Initials:** _____

### LOAN INFORMATION

**Loan Start Date and First Payment Date**

The Loan Start Date and First Payment Date will be outlined in your Loan Closing Certificate (Exhibit A), an example of which is fully incorporated herein.  This certificate will be sent to you following disbursement of the loan proceeds.

**The Loan Start Date will be the date that we disburse loan proceeds to your Contractor.**

**The estimated First Payment Date assumes you will begin making payments approximately 60 days after the Loan Start Date.  You are obligated to make all loan payments starting on your first payment date, regardless of the utility company granting permission to operate.**

**Borrower's Initials:** _GP_         **Co-Borrower's Initials:** _____

The longer your First Payment Date is from the Loan Start Date, the more interest you will pay, as interest on this loan accrues on the outstanding principal balance until the First Payment Date.  If you wish to reduce the amount of interest that accrues, you can begin making payments earlier, at any time you choose after the Loan Start Date.

Your loan application was approved for a period of 180 days from the initial credit report date.  If the Loan Start Date does not occur within 180 days, we will request a new credit report from the credit bureaus, to make sure that you continue to qualify for the same loans terms. This may impact your credit score.

**Tax Credit**

You may be eligible for a federal solar investment tax credit. You acknowledge that eligibility for this tax credit is not guaranteed. In order to realize the benefits of the solar investment tax credit, you must have federal income liability that is at least equal to the value of the credit. We are not financially responsible for your receipt of any tax credits related to the System. We do not provide tax advice and nothing in this Loan Agreement is intended to be used as tax advice. To determine your eligibility for any federal solar investment tax credit, you should make an independent assessment or consult with your tax advisor.

**Target Balance Payments and Initial Monthly Payments**

You are not required to make prepayments. However, you acknowledge that in order to avoid an increase in your Initial Monthly Payment, you must make one or more voluntary prepayments equal to 30% of your Total Loan Amount by your Target Balance Date. If you pay more than 30% of your Total Loan Amount, your monthly payments will be adjusted to a lower amount. If you do not make any prepayments, or if your prepayments are less than 30% of your Total Loan Amount, your monthly payments will be adjusted to a higher amount.  You also understand that your Initial Monthly Payments will not be fully amortizing, but your new Monthly Payment after the Target Balance Date will be fully amortizing.

**Borrower's Initials:** _GP_         **Co-Borrower's Initials:** _____

**Security Agreement**

You authorize us to file on your behalf any documentation, including but not limited to a copy of this Agreement, a UCC financing statement and/or a county fixture filing required to perfect our security interest in the Collateral to the extent required by applicable law, as outlined in Section 6 of this agreement.

**FOR MASSACHUSETTS BORROWERS ONLY: You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.**

### LOAN AGREEMENT

THIS AGREEMENT IS LEGALLY BINDING AS OF AND FOLLOWING THE EFFECTIVE DATE. IN THIS AGREEMENT, THE WORDS "YOU" AND "YOUR" REFER TO BORROWER, CO-BORROWER AND BORROWER'S AND/OR CO-BORROWER'S PERMITTED ASSIGNEES, AND THE WORDS "LENDER," "WE," "US" AND "OUR" REFER TO LOANPAL OR ITS ASSIGNEES.  THIS AGREEMENT SUPERSEDES ANY PRIOR AGREEMENT BETWEEN YOU AND US CONCERNING THE SAME SUBJECT MATTER.

**1. INTRODUCTION.** The parties (each, a "Party" and collectively, "Parties") to this Agreement are you and Paramount Equity Mortgage, LLC d/b/a Loanpal ("Loanpal"). Your solar installation contractor ("Contractor") has provided us with a copy of a signed home improvement agreement between you and the Contractor (the "Home Improvement Agreement") under which it will install solar panels, inverters, racking systems, wiring, electrical and mechanical connections, metering, monitoring and/or other distributed generation interconnect equipment ("Solar Equipment") and may, in addition or instead, install new roofs and

Case ID: 220601757

DocuSign Envelope ID: C807AB69-7755-4934-A2A5-98037C9A95D9

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

related roofing materials, battery storage equipment, electrical vehicle power charging equipment, and thermostat equipment, and provide landscaping services to accommodate the solar system (together with the Solar Equipment, "Purchased Goods") at your home ("Residence") located at the Residence Address listed above.

**2.   PROMISE TO PAY.**  For value received, you promise to pay to Loanpal or its assignees, the principal sum of the Total Loan Amount, with interest as set forth in Section 3 ("Interest and Payments") and any fees assessed in Section 4 ("Fees") below.

**3.   INTEREST AND PAYMENTS.**

a.   <u>Payment Timing</u>.  Your first Monthly Payment is due and payable on the First Payment Date (estimated on the Truth in Lending Disclosure and finalized on the Loan Closing Certificate).

b.   <u>Payment Application</u>.  If you make a payment that satisfies all current and past due installments, any additional payment will be allocated as set forth in the following sentence, but that additional payment will not change the due date for any payment that comes due in the future. To the extent permitted by applicable law, all payments or prepayments will be applied first to accrued interest, then to unpaid principal in the inverse order of maturity (last to first), and then to our fees or costs payable to us under this Agreement.

c.   <u>Accrual</u>.  Interest will accrue on the loan amounts actually disbursed, with the first accrual starting on the first calendar day following the Loan Start Date. Interest will continue to accrue until all amounts owed under this Agreement are paid in full.  Unpaid interest will not be added to the principal balance.  To the extent permitted by applicable law, interest on your loan will be calculated on a 30/360 basis. For any partial month, interest accrues based on the actual number of days your loan is outstanding for such partial month.  If you make your loan payments late, more interest will accrue, and the total finance charge you pay over the life of your loan will be higher. If you make your loan payments early, less interest will accrue, and the total finance charge you pay over the life of your loan will be less. Interest accrues between the Loan Start Date and your First Payment Date, and the longer the period of time between the Loan Start Date and your First Payment Date, the more interest will accrue.  If you wish to reduce the amount of interest that accrues before your First Payment Date, you can begin making loan payments any time after the Loan Start Date. The amount of your final loan payment will change based on when you pay your monthly loan payments.

d.   <u>Interest Rate and Monthly Payment Amounts</u>.  Your interest rate is fixed (shown on Page 1) throughout the term of your loan. The monthly payments you must make, assuming you make all payments in full and on time, are set forth in your Loan Closing Certificate.

e.   <u>Target Balance / Target Balance Date / Initial Monthly Payment / New Monthly Payment</u>:  After the Target Balance Date, your loan will re-amortize to reflect your outstanding principal balance on the Target Balance Date and your new Monthly Payments will be adjusted to an amount required to cause the full repayment of the Loan by the Maturity Date.  You understand that your Initial Monthly Payments will not be fully amortizing, but your new Monthly Payments after the Target Balance Date will be fully amortizing and will be calculated as follows:

    (i)   If you do not make <u>any</u> voluntary prepayments before the Target Balance Date, then your new Monthly Payment will be the Adjusted Monthly Payment.

    (ii)   If you make voluntary prepayments but such prepayments do not reduce your Total Loan Amount equal to or below the Target Balance by the Target Balance Date, then your new Monthly Payment will be an amount greater than your Initial Monthly Payment but less than the Adjusted Monthly Payment.

    (iii)   If you make voluntary prepayments and such prepayments reduce your Total Loan Amount equal to the Target Balance by the Target Balance Date, then your new Monthly Payment will be approximately equal to your Initial Monthly Payment.

    (iv)   If you make excess voluntary prepayments to reduce your unpaid Total Loan Amount to less than the Target Balance by the Target Balance Date, then your new Monthly Payment will be less than the Initial Monthly Payment reflected in the Loan Summary above for the remainder of the Term.

f.   <u>Maturity Date</u>.  Unless your loan is due earlier and provided as provided in this Agreement, your loan will mature on the Maturity Date.  On the Maturity Date, you agree to pay in full any unpaid amounts payable under this Agreement.

g.   <u>Payment Method</u>.  You may pay by ACH or check. To pay by ACH, complete the Automatic Payment Authorization Form (the "ACH Authorization"). To pay by check, include your Loan Agreement Number on your check and mail it to LOANPAL, PO BOX 4387, Portland, OR 97208. You may change your payment method by following the instructions in the ACH Authorization.

h.   <u>Prepayment</u>. You may prepay your loan at any time without penalty.

**4.   FEES.**  We will also charge you the following fees to the extent permitted by applicable law.

a.   <u>Insufficient Funds Fee</u>. Unless prohibited by law, you will be charged a non-refundable fee of $15 for each failed electronic or check payment attempt. Your bank may assess its own fee in addition to the fee we assess.

**5.   ADDITIONAL OBLIGATIONS AND REPRESENTATIONS.**

a.   <u>Collateral</u>. To the extent permissible by law, you irrevocably grant us a limited power of attorney with full power of substitution and re-substitution, to sign any documents and perform any acts, in your name and on your behalf, for the exclusive purpose of exercising our rights with respect to the Collateral under this Agreement. You also agree not to pledge, mortgage, encumber or otherwise permit the Collateral at any time to be subject to any lien or encumbrance that is superior to our security interest.

b.   <u>Ownership Confirmation</u>.  You represent and covenant that: (1) the Residence is your primary residential home dwelling or a second/vacation home and is not a rental property, or any business or commercial establishment or used as such; (2) you, or a trust controlled by you, are the fee simple owner of the Residence and the Collateral; (3) you are not, and will not, be in breach of your Home Improvement Agreement.

c.   <u>Collateral Access</u>. You agree to provide us or our designees after receiving reasonable notice, with access to the Residence for the purposes of (1) inspecting the Purchased Goods until this Agreement terminates or, (2) in the case of a foreclosure on the Collateral, removing the Collateral from the Residence.

d.   <u>Personal Property</u>. You and we both expressly intend that no portion of the Collateralized Goods will constitute a "fixture" attached to any real property, and that the Collateralized Goods will be removable personal property. You also agree not to take any action that might cause the Collateralized Goods to be treated as real property or as fixtures to real property. You agree that we may make a fixture filing, if we choose, provided that you and we agree that we may enforce rights in the Collateralized Goods under the Uniform Commercial Code and not under state real estate or mortgage law.

e.   <u>Installation</u>. You will take all steps necessary to enable the installation and proper functioning of the Purchased Goods to be completed in accordance with the Home Improvement Agreement and to be maintained in accordance with any Operations and Maintenance Agreement. You agree to keep the Purchased Goods in good working order and in compliance with manufacturing specifications, the operating and maintenance manuals, warranty requirements provided by your Installation Contractor and, if applicable, your Operations and Maintenance Contractor, and all applicable law, and not to remove or modify the Purchased Goods without our prior written consent. You agree to maintain at all times an internet connection sufficient to ensure that monitoring data for the Solar Equipment can be fully transmitted.  You will be responsible for the structural integrity of the location where the Purchased Goods are installed, including structural or electrical modifications necessary to prepare your Residence for the Purchased Goods.

f.   <u>Property Conditions</u>. You agree that Loanpal is not responsible for any known or unknown Residence conditions.  Loanpal is not responsible and bears no liability for the malfunctioning of existing electrical equipment at the Residence, including but not limited to the main electrical service panel, any major electrical devices, or any other fuses or similar devices.

Case ID: 220601757

DocuSign Envelope ID: C807AB69-7755-4934-A2A5-98037C9A95D9

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

g.   <u>Taxes.</u> You agree to pay, when due, your taxes, assessments, or other similar fees. If you do not pay these taxes or other fees when due, we may pay them on your behalf and add the amount we pay to the principal of our loan under this Agreement. In the event that we choose pay these taxes and/or other fees on your behalf, you agree to assist us in these efforts. Tax obligations that you may be required to pay may include: (1) the assessed value and the property tax assessments associated with the Purchased Goods calculated in the year this Agreement is signed; (2) transaction privilege taxes; and (3) any obligation to transfer tax credits or tax incentives of the Purchased Goods to any other person.

h.   <u>Required Insurance.</u> To the extent permissible by law, you agree to maintain and pay any deductibles under a homeowners' insurance policy or equivalent insurance policy reasonably acceptable to us covering the Purchased Goods in an amount equal to the full replacement and installation cost of the Purchased Goods or the outstanding balance of the loan. If there is a payout under the property coverage for damage to the Purchased Goods, you agree to deliver those insurance proceeds to us, and we will apply those proceeds to the loan in the order of priority set forth in Section 3b. of this Agreement.

i.   <u>Credit Inquiries.</u> You authorize us to obtain a credit report on you for any legal purpose in connection with this loan, including any update, extension of credit, review, or collection of this loan. Upon request, we will tell you the name and address of the credit bureau furnishing any report.

j.   <u>Bankruptcy.</u> You represent that you are not contemplating bankruptcy and that you have not consulted with an attorney regarding bankruptcy in the past six months. Any communication with us required or permitted under the Federal Bankruptcy Code must be in writing, must include your loan number, and must be sent to us at the address for Loanpal.

**6.   GRANT OF SECURITY INTEREST IN COLLATERAL.** As consideration for the loan we are providing and to secure your obligations under this Agreement, you hereby grant to us a security interest in the following property (collectively "Collateral"):

a.   all Purchased Goods excluding the roof and related roofing materials, if any (such Purchased Goods which excludes the roof and related roofing materials are referred to in this Agreement as "Collateralized Goods");

b.   all accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to the Collateralized Goods;

c.   all proceeds from warranty claims related to the Collateralized Goods, the Home Improvement Agreement and any Operations and Maintenance Agreement;

d.   all your rights, title, interests, and remedies under all agreements and other documentation relating to the Collateralized Goods (including, without limitation, the Home Improvement Agreement, and Operations and Maintenance Agreement);

e.   all consideration received from the collection, sale or other disposition of the Collateralized Goods, including any payment received from any insurer arising from any loss, damage or destruction of any Collateralized Goods and any other payment received as a result of possessing any Collateralized Goods, or any other proceeds of Collateralized Goods.

You authorize us to file on your behalf any documentation, including but not limited to a copy of this Agreement, a UCC financing statement and/or a county fixture filing required to perfect our security interest in the Collateralized Goods, to the extent required by applicable law. If you are refinancing your home, upon request, we may agree to lift our county fixture filing, on the Solar Equipment for a limited period of time, provided we will be able to refile upon closing of the mortgage refinancing. A $200 fee will be assessed for the removal and refiling of our county fixture filing. If you sell your home, your loan must be paid in full to remove the UCC financing statement and county fixture filing. The actual costs incurred, if any, of removing a UCC financing statement or country fixture filing will be added to your payoff amount if you elect to pay your loan in full before the end of the loan term. Alternatively, this loan agreement may be transferred to the new home owner if the new home owner qualifies for the loan product as outlined in Section 12. A $300 transfer fee will be assessed for any transferred loan agreements.

**7.   INDEMNIFICATION.** You agree to indemnify, defend and hold harmless us and our affiliates against any loss, liability, or damage that arises out of or relates to the transactions contemplated by this Agreement.

**8.   DEFAULT.** You will be in default under this Agreement if any of the following occurs:

a.   you fail to make any payment under this Agreement within fifteen (15) days of the date such payment is due;

b.   you fail to perform any of your obligations under this Agreement and you fail to cure such failure to perform to our reasonable satisfaction within thirty (30) days after receiving notice from us of your failure to perform;

c.   you terminate the Home Improvement Agreement without our consent after any loan proceeds have been disbursed;

d.   you remove, modify, sell or otherwise transfer the Collateral without our approval;

e.   any representation made by you on your loan application or this Agreement is false in any material respect when made;

f.   any of the following occurs (each a "Bankruptcy Event"): (1) you make an application for the appointment of a receiver, trustee or custodian or a receiver, trustee or custodian is appointed for you or a majority of your assets; (2) you initiate or consent to any legal proceedings under the Bankruptcy Code, or equivalent law providing for the relief of debtors; (3) you make an assignment for the benefit of creditors; or (4) you have a petition in bankruptcy or similar relief of debtors filed against you, which is not withdrawn or discharged within thirty (30) days of being filed.

**9.   REMEDIES.** Our remedies if you default on this Agreement include the following (to the fullest extent permitted by law):

a.   <u>General.</u> In the event that you are in default under this Agreement, we may:

    (1)  <u>Accelerate your Loan:</u> We would declare our loan immediately due and payable. This requires you to pay in full the unpaid principal amount of the loan, all accrued interest, and any other amounts due under this agreement. Your loan will become immediately due and payable to us under a Bankruptcy Event, regardless of whether or not we take any action.

    (2)  <u>Provide a report to the credit bureaus detailing any late payments, missed payments or other defaults:</u> As required by law, you are hereby notified that a negative report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of this Agreement.

    (3)  <u>Disable / Foreclose on the Collateral:</u> (and exercise any other rights with respect to the Collateral that we have under this Agreement or applicable law). This includes disabling the Equipment remotely or by entering upon your property; and/or entering upon your property and removing and taking possession of the Collateral and then selling, leasing, or otherwise disposing of the property.

    (4)  <u>Pursue all remedies available under applicable law:</u> Including those of a secured creditor as permitted by applicable law.

    (5)  <u>Stop making credit extensions under your loan:</u> Including ceasing any funding that may be pending on your loan as permitted by applicable law

b.   <u>Cost Reimbursement; Application of Proceeds.</u> Unless otherwise prohibited by state law, you are to promptly reimburse us, with interest, for all costs and expenses incurred in exercising our remedies related to this Agreement. If we choose to foreclose on the Collateral, we will apply any cash proceeds in the order of priority set forth in Section 3b. of this Agreement and then to you or as a court may otherwise direct.

c.   <u>Deficiency Judgment.</u> To the fullest extent permitted by law we may require that you pay any amounts payable by you under this Agreement less any proceeds that we realize from our exercise of our remedies under this Agreement.

TO THE FULLEST EXTENT PERMITTED BY LAW, YOU ARE PERSONALLY LIABLE FOR ALL AMOUNTS PAYABLE UNDER THIS AGREEMENT. WE ARE NOT REQUIRED TO FORECLOSE ON THE COLLATERAL BEFORE INITIATING PROCEEDINGS AGAINST YOU AND YOUR ASSETS.

Case ID: 220601757

DocuSign Envelope ID: C807AB69-7755-4934-A2A5-98037C9A95D9
THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

Our rights under this Agreement are cumulative and we may exercise these rights at any time if you default. In the event that we exercise any of our rights or remedies under this Agreement, you will continue to be in default until such time that you pay to us all amounts due and payable to us and you have cured any and all defaults. OUR FAILURE TO TAKE ANY ACTION OR DELAY TAKING ANY ACTION RELATED TO YOUR DEFAULT, OR SIMILAR OR UNRELATED DEFAULT, DOES NOT WAIVE, OR IMPLY A WAIVER OF ANY OF OUR RIGHTS UNDER THIS AGREEMENT.

**10.   TERMINATION.** We may terminate this Agreement during any period in which a Force Majeure Event prevents, limits or otherwise impairs our ability to perform our obligations under this Agreement.  This Agreement will terminate automatically if the final loan disbursement does not occur within one hundred eighty (180) days of the date you most recently received credit approval by us to enter into this Agreement.  No delay in our exercise of the foregoing termination rights shall constitute a waiver of our continuing rights to terminate the Agreement.  In addition, you may terminate this Agreement at any time prior to our disbursement of the loan proceeds, by sending advance written notice to us.  The terms of this Agreement that would, by their express nature, survive the termination of this Agreement will survive and be enforceable under this Agreement. Upon termination of this Agreement, our security interest in the Collateral will terminate.

**11.   NOTICES AND OTHER INFORMATION.** You consent to receipt through electronic mail to the email address set forth by you on Page 1 ("Designated Email") of all notices, records, disclosures and other information related to this Agreement ("Electronic Records").  All provisions of any Electronic Records are binding on you just as if they were delivered in paper.  You agree to notify us if your name, email, or mailing address changes.

**12.   ASSIGNMENT/REGISTERED FORM.** You may not assign or transfer your rights or obligations under this Agreement without our prior written consent, provided, that if you sell your home, you may transfer the loan obligations to the new home owner if (a) they meet our credit and underwriting criteria in place at that time by notifying us in writing at least thirty (30) days in advance using the contact information noted at the top of this Agreement, and (b) the warranties and operations and maintenance service obligations (if any) pertaining to the Purchased Goods are transferred to the new home owner.  We reserve the right to not allow assignment of the loan in cases where you are in default under this Agreement. You agree that we may assign or transfer all or a portion of this Agreement and the related documents to any third party or affiliate. Loanpal or its agent, acting as a non-fiduciary agent of the Borrower, shall maintain, a register within the meaning of U.S. Treasury Regulations Sections 5(f).103-1(c) on which it will record the names and addresses of each owner and their rights to principle and stated interest.  Any transfer of all or a portion of a beneficial interest hereunder shall be recorded on such register.  All parties to this agreement or their agents may treat each person or entity whose name is recorded in such register pursuant to the terms hereof as the applicable participant for all purposes under this Agreement. The register shall be available for inspection from time to time by any party hereto upon reasonable prior notice to Loanpal or any of its agents. YOU AUTHORIZE US TO PROVIDE TO A THIRD PARTY OR AFFILIATE ANY INFORMATION THAT THEY MAY REQUEST IN CONSIDERING OR IMPLEMENTING A PURCHASE OF OUR RIGHTS UNDER THIS AGREEMENT.   Arizona borrowers only: we will notify you if the entity responsible for allowing the assignment of your loan changes.

**13.** LIMITATION OF LIABILITY.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, OUR LIABILITY TO YOU UNDER THIS AGREEMENT, IF ANY, SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY. YOU AGREE THAT IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES.

**14.   GOVERNING LAW AND MISCELLANEOUS.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Except for the Arbitration agreement below, this Agreement shall be governed by federal law and, to the extent state law applies, the substantive laws of the state where the Residence is located. If any provision of this Agreement cannot be enforced, the rest of this Agreement will stay in effect. No amendment of this Agreement will be valid unless in writing and signed by both Lender and you (the Loan Closing Certificate shall not be deemed an amendment of this Agreement and is fully incorporated into this Agreement). This Agreement represents the entire agreement between the Parties regarding your loan.  Our rights under this Agreement shall inure to the benefit of our successors and assigns, and your obligations under this Agreement shall be binding upon your heirs, personal representatives and permitted assigns.

**15.   ARBITRATION AGREEMENT.** All claims and disputes arising out of or relating to this Agreement (hereafter, "Dispute(s)") shall be resolved by binding arbitration on an individual basis. The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues). YOU HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JURY.  FURTHER, UNLESS YOU OPT OUT OF ARBITRATION, YOU ALSO AGREE TO WAIVE ANY RIGHT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION. The arbitrator shall have the authority to award any relief, including injunctive relief, which is available under applicable law. Each party shall bear the expense of its own counsel, experts, witnesses and preparation and presentation of proofs. However, the arbitrator may award you reasonable attorney's fees and costs if this is expressly authorized by applicable law. Upon request, we will pay a portion of the fees and expenses of the arbitrator and the administrative fees and expenses of the arbitration. The arbitrator shall issue a written award describing the essential findings supporting the award. All hearings in the arbitration shall take place within the federal judicial district where the Residence is located; the arbitrator's award shall be final and judgment on the arbitrator's award may be entered by the federal District Court. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules (the "Rules"). A copy of the JAMS Streamlined Arbitration Rules can be obtained from JAMS at https://www.jamsadr.com/rules-streamlined-arbitration or (800) 352-5267. The arbitrator shall be selected from the JAMS panel of neutrals and shall be a retired federal judge, a retired state appellate judge, or a retired state trial judge (in that order of preference). You agree that this agreement to arbitrate may be enforced by us or our affiliates, subsidiaries, or parents, and (g) each of their officers, directors, employees, and agents. This arbitration agreement is made pursuant to a transaction involving interstate commerce. The Federal Arbitration Act (9 U.S.C. §§1-16) (the "FAA") shall govern this agreement to arbitrate including all arbitrability issues. No state law respecting arbitrability issues shall govern this agreement to arbitrate. Subject to and without limiting the foregoing, federal law shall apply to all other issues that arise under federal law and applicable state law as set forth in Section 14 above shall apply to all other issues that arise under state law (without reference to a state's choice of law rules).  YOU MAY OPT OUT OF ARBITRATION BY SENDING US WRITTEN NOTICE WITHIN 15 DAYS OF SIGNING THE AGREEMENT STATING THAT YOU WISH TO "OPT OUT OF THE AGREEMENT TO ARBITRATE DISPUTES." THE OPT-OUT NOTICE SHOULD BE SENT TO THE FOLLOWING ADDRESS: LOANPAL, 8781 Sierra College Blvd., Roseville, CA 95661. If you do not opt out, but any part or parts of your agreement to arbitrate are unenforceable then Loanpal and you agree that such specific part or parts shall be of no force or effect and shall be severed, but the remainder of this agreement to arbitrate shall continue in full force and effect. If, however, the entire agreement to arbitrate or your waiver of the right to participate in class, representative or to arbitrate injunctive relief claims is unenforceable then the agreement to arbitrate shall be of no force or effect.

**JUDICIAL REFERENCE FOR CALIFORNIA BORROWERS. IF THE RESIDENCE IS IN CALIFORNIA AND YOU OPT-OUT OF ARBITRATION, LOANPAL AND YOU AGREE THAT ANY DISPUTES WILL BE RESOLVED IN THE SUPERIOR COURT FOR THE COUNTY IN A GENERAL REFERENCE PURSUANT TO THE CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP"), § 638(a). YOU ACKNOWLEDGE AND AGREE THAT IN A REFERENCE ACTION, ANY DISPUTE WILL BE HEARD BY A REFEREE AND NOT BY A SUPERIOR COURT JUDGE AND JURY AND HEREBY WAIVES HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO HAVE A TRIAL IN FRONT OF A JUDGE AND JURY. The Referee shall be appointed pursuant to CCP § 640 in the absence of agreement on the selection. The Referee shall have the same qualifications as the arbitrator. Upon request, Loanpal will pay your portion of the fees and expenses of the Referee.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, IF THE RESIDENCE IS IN CALIFORNIA AND YOU DO NOT OPT-OUT OF ARBITRATION, YOU MAY SEEK PUBLIC INJUNCTIVE RELIEF IN ARBITRATION TO THE EXTENT PERMITTED BY APPLICABLE LAW.  IF, HOWEVER, ARBITRATION IS UNENFORCEABLE, IN WHOLE OR IN PART, THEN LOANPAL AND YOU AGREE THAT SUCH DISPUTES WILL BE RESOLVED IN THE SUPERIOR COURT FOR THE COUNTY IN A GENERAL REFERENCE PURSUANT TO THE CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP"), § 638(a).  YOU ACKNOWLEDGE AND AGREE THAT IN A REFERENCE ACTION, ANY DISPUTE WILL BE HEARD BY A REFEREE AND NOT BY A SUPERIOR COURT JUDGE AND JURY AND HEREBY WAIVES HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO**

4

Case ID: 220601757

DocuSign Envelope ID: C807AB69-7755-4934-A2A5-98037C9A95D9

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

HAVE A TRIAL IN FRONT OF A JUDGE AND JURY. The Referee shall be appointed pursuant to CCP § 640 in the absence of agreement on the selection. The Referee shall have the same qualifications as the arbitrator. Upon request, Loanpal will pay your portion of the fees and expenses of either the arbitrator or the Referee, as the case may be, any your portion of any administrative fee that the arbitrator, referee or JAMS may require.

Nothing in Section 15 shall prejudice the right of either party to: (a) seek and obtain such provisional relief or remedies as shall otherwise be available judicially pending appointment of the arbitrator or referee (b) bring their Dispute in small claims court on an individual basis, (c) exercise such self-help remedies as are authorized by law or contract, or (d) pursue judicial foreclosure as set forth in Section 9.

BY PLACING YOUR INITIALS BELOW THIS NOTICE YOU CERTIFY THAT YOU HAVE READ AND AGREE TO SECTION 15 IN ITS ENTIRETY.

Borrower's Initials: _GP_          Co-Borrower's Initials: _____

**16.   ECOA NOTICE.** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (providing that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is:  The Federal Trade Commission, Consumer Response Center, Washington, DC 20580.  Phone: 1-877-382-4357.

**17.   BUYER'S RIGHT TO CANCEL.** YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

**18.  STATE-SPECIFIC DISCLOSURES.**

ARIZONA BORROWERS ONLY: This instrument is based upon a home solicitation sale, which is subject to the provisions of title 44, chapter 15.1. This instrument is not negotiable.

**NOTICE OF RIGHT TO FILE COMPLAINT**
The owner of the property subject to this contract has a right to file a written complaint with the Arizona Registrar of Contractors for an alleged violation of Ariz. Rev. Stat. § 32-1154(A) within two (2) years of completion of the specific project subject to this contract. The Arizona Registrar of Contractors may be reached through its website: https://roc.az.gov/; or by telephone: (602) 542-1525.

Notice: You may request that the initial disclosures prescribed in the truth in lending act (15 United States Code §§ 1601 through 1666j) be provided in Spanish before signing any loan documents.
Aviso: Usted puede solicitar que las divulgaciones iniciales prescritas en la Ley de veracidad en los préstamos (Código 15 de los Estados Unidos de América, artículos 1601-1666j) se provean en español antes de firmar cualquier documento del préstamo.

Utility rates and utility rate structures are subject to change. These changes cannot be accurately predicted. Projected savings from your distributed energy generation system are therefore subject to change. Tax incentives are subject to change or termination by executive, legislative or regulatory action. By initialing below, you confirm receipt of this disclosure.

Borrower's Initials: _GP_          Co Borrower's Initials: _____

CALIFORNIA BORROWERS ONLY: **This loan is made pursuant to the California Finance Lenders Law, Cal. Fin. Code § 22000 et seq. FOR INFORMATION CONTACT THE DEPARTMENT OF BUSINESS OVERSIGHT, STATE OF CALIFORNIA.**

DISTRICT OF COLUMBIA BORROWERS ONLY: **Buyer's Right to Cancel** – If this agreement was solicited at or near your residence and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and it must be mailed before midnight of the third business day after you signed this agreement. The notice must be mailed to LOANPAL, 8781 Sierra College Blvd., Roseville, CA 95661.

FLORIDA BORROWERS ONLY: This is a home solicitation sale, and if you do not want the goods or services, you may cancel this agreement by providing written notice to the seller in person, by telegram, or by mail. This notice must indicate that you do not want the goods or services and must be delivered or postmarked before midnight of the third business day after you sign this agreement. If you cancel this agreement, the seller may not keep all or part of any cash down payment.

ILLINOIS BORROWERS ONLY: Prepayment in full on any installment date under this agreement will reduce insurance charges for the loan.

KANSAS BORROWERS ONLY:  **NOTICE TO CONSUMER:**

(1 Do not sign this agreement before you read it.

(2) You are entitled to a copy of this agreement.

(3) You may prepay the unpaid balance at any time without penalty.

MASSACHUSETTS BORROWERS ONLY:  **You may cancel this agreement if it has been signed by a party thereto at a place other than an address of the seller, which may be his main office or branch thereof, provided you notify the seller in writing at his main office or branch by ordinary mail posted, by telegram sent or by delivery, not later than midnight of the third business day following the signing of this agreement.  See the attached notice of cancellation form for an explanation of this right.**

MARYLAND BORROWERS ONLY: This loan is made pursuant to the Credit Grantor Closed-end Credit Provisions of Title 12, Subtitle 10 of the Maryland Commercial Law Article (Md. Code Ann., Com. Law § 12-1001 et seq.).

MICHIGAN BORROWERS ONLY: Notice to buyer:

(1) Do not sign this contract before you read it.

(2) You are entitled to a completely filled-in copy of this contract.

(3) Under the law, you have the right to pay off in advance the full amount due and, under certain conditions, to obtain a partial refund of the finance charge.

(4) You may rescind or cancel this contract, not later than 5 p.m. on the business day following the date thereof by giving written notice of rescission to the contractor or his agent at his place of business given in the contract or by mailing the notice or cancellation to the contractor to his place of business given in the contract by depositing a properly addressed certified letter in a United States post office or mail box, but if you rescind after 5 p.m. on the business day following, you are still entitled to offer defenses in mitigation of damages and to pursue any rights of action or defenses that arise out of the transaction.

**The seller is prohibited from having an independent courier service or other third party pick up your payment at your residence before the end of the 3-business-day period in which you can cancel the transaction.**

MISSOURI BORROWERS ONLY: **NOTICE OF CANCELLATION**

Case ID: 220601757

DocuSign Envelope ID: C807AB69-7755-4934-A2A5-98037C9A95D9

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

If this agreement was solicited at your residence and you do not want the goods or services, you may cancel, without further obligation, this agreement by mailing a notice to the seller at the address as shown below, within 3 business days following the above date. You shall return the goods to seller in substantially the same condition as when you obtained them. Seller will then cancel all contracts and negotiable instruments executed by you and return any property given by you to seller within 10 days from date of transaction. If seller does not pick up the purchased goods within 20 days from date of your cancellation, you may retain or dispose of the goods without any further obligation.

The notice must be mailed to: LOANPAL; 8781 Sierra College Blvd, Roseville, CA 95661

<u>NEW HAMPSHIRE BORROWERS ONLY</u>: **You or your attorney may file a complaint with the New Hampshire Bank Commissioner.**

<u>NEW JERSEY BORROWERS ONLY</u>:
**RECEIPT**: LOANPAL - 8781 Sierra College Blvd., Roseville, CA 95661, Residential Solar/Storage System    Loan Down Payment: $0
**NOTICE TO RETAIL BUYER**: YOU MAY RESCIND THIS SALE PROVIDED THAT YOU NOTIFY THE RETAIL SELLER OF YOUR INTENT TO DO SO BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, POSTMARKED NOT LATER THAN 5 P.M. OF THE THIRD BUSINESS DAY FOLLOWING THE SALE. FAILURE TO EXERCISE THIS OPTION, HOWEVER, WILL NOT INTERFERE WITH ANY OTHER REMEDIES AGAINST THE RETAIL SELLER YOU MAY POSSESS. IF YOU WISH, YOU MAY USE THIS PAGE AS NOTIFICATION BY WRITING 'I HEREBY RESCIND' AND ADDING YOUR NAME AND ADDRESS. A DUPLICATE OF THIS RECEIPT IS PROVIDED BY THE RETAIL SELLER FOR YOUR RECORDS.

<u>OHIO BORROWERS ONLY</u>: This loan is made pursuant to the provisions of Ohio Rev. Code Ann. §§ 1321.62-1321.702.

<u>OKLAHOMA BORROWERS ONLY</u>: You should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties.

BUYER'S RIGHT TO CANCEL If this agreement was solicited at your residence and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and must be mailed before midnight of the third business day after you sign this agreement.

The notice must be mailed to: LOANPAL; 8781 Sierra College Blvd., Roseville, CA 95661.

If you cancel, the seller may keep all or part of your cash down payment not to exceed five percent (5%) of the cash price.

<u>RHODE ISLAND BORROWERS ONLY</u>: **NOTICE OF CANCELLATION –** You may cancel this transaction, without any penalty or obligation, within three (3) business days from the above date. If you cancel, your cancellation notice must state that you do not wish to be bound by the agreement and mailed by registered or certified mail not later than midnight three (3) days following the buyer's signing the agreement, excluding Sunday and any holiday on which regular mail deliveries are not made. All cancellations must be mailed to: LOANPAL, 8781 Sierra College Blvd., Roseville, CA 95661.

<u>SOUTH CAROLINA AND IDAHO BORROWERS ONLY</u>: **BUYER'S RIGHT TO CANCEL –** If you decide you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and must be mailed before midnight of the third business day after you sign this agreement.

The notice must be mailed to: LOANPAL, 8781 Sierra College Blvd., Roseville, CA 95661.

<u>UTAH BORROWERS ONLY</u>: **BUYER'S RIGHT TO CANCEL –** If this agreement was solicited at your residence or place of employment and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and must be mailed before midnight on the third business day after you sign this agreement. The notice must be mailed to: LOANPAL, 8781 Sierra College Blvd., Roseville, CA 95661.

<u>VIRGINIA BORROWERS ONLY</u>: **BUYER'S RIGHT TO CANCEL – If this agreement was solicited at a residence and you do not want the goods or services, you, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.**

<u>ARIZONA, RHODE ISLAND, AND WISCONSIN BORROWERS ONLY</u>: NOTICE TO BUYER
(1) Do not sign this agreement if any of the spaces intended for the agreed terms of the extent of then available information are left blank.
(2) You are entitled to a copy of this agreement at the time you sign it.
(3) You may at any time pay off the full unpaid balance due under this agreement, and in so doing you may be entitled to receive a partial rebate of the finance and insurance charges.
(4) The seller has no right to enter unlawfully your premises or commit any breach of the peace to repossess goods purchased under this agreement.
(5) You may cancel this agreement if it has not been signed at the main office or a branch office of the seller, provided you notify the seller at his main office or branch office shown in the agreement by registered or certified mail, which shall be posted not later than midnight of the third calendar day after the day on which the buyer signs the agreement, excluding Sunday and any holiday on which regular mail deliveries are not made. See the attached notice of cancellation form for an explanation of buyer's rights.

By signing below I/we confirm that I/we have read and agree to the terms in the Loan Agreement:

Borrower: *Gwendolyn Purnell*
— DocuSigned by: —
1F14E003B6DD499...

Date: 11/28/2018

Co-Borrower: _____

Date: _____

Loanpal: *Matt Dawson*
Matt Dawson, COO

Case ID: 220601757

# EXHIBIT "C"

Case ID: 220601757

Record at the request of and
when recorded return to:
Paramount Equity Mortgage,
LLC DBA Loanpal

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|

Doc Id: 53484581    **UU**
03/06/2019   11:06 AM   Page 1 of 2

B. E-MAIL CONTACT AT FILER (optional)
filings@loanpalsupport.com

This Document Recorded   Doc Id: 53484581   Doc Code: UU
03/06/2019  11:06 AM   Receipt #:19-21595
Rec Fee: $188.50
Records Department, City of Philadelphia    MB

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Paramount Equity Mortgage, LLC DBA Loanpal
PO Box 4387
Portland, OR  97208

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME:  Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 1b. INDIVIDUAL'S SURNAME Purnell | FIRST PERSONAL NAME Gwendolyn | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | 1c. MAILING ADDRESS 1827 Morris St | CITY Philadelphia | STATE PA | POSTAL CODE 19145 | COUNTRY USA |

2. DEBTOR'S NAME:  Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only one Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME Paramount Equity Mortgage, LLC DBA Loanpal | | | | |
|---|---|---|---|---|---|
| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | 3c. MAILING ADDRESS 8781 Sierra College Boulevard | CITY Roseville | STATE CA | POSTAL CODE 95746 | COUNTRY USA |

4. COLLATERAL:  This financing statement covers the following collateral:

All of the debtor's right, title and interest in the Photovoltaic Solar Energy Equipment or Energy Storage/Battery Equipment (if any), including but not limited to rooftop solar panels, solar roofing materials, wall mounted batteries, stand alone batteries, inverters, cables and wires, support brackets, roof mounted or ground mounted racking systems, related equipment, and additions or replacements of the same.  In addition, the security interest includes all warranties issued with respect to the referenced collateral.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative | | |
|---|---|---|
| 6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | 6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☒ Non-UCC Filing | |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☒ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | | |

8. OPTIONAL FILER REFERENCE DATA:
Acct # ▬▬▬▬▬▬

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| |

OR

**9b. INDIVIDUAL'S SURNAME**
Purnell

**FIRST PERSONAL NAME**
Gwendolyn

**ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|
| |

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|
| |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**



**13.** ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14. This FINANCING STATEMENT:**
☐ covers timber to be cut ☐ covers as-extracted collateral ☒ is filed as a fixture filing

**15. Name and address of a RECORD OWNER of real estate described in item 16** (if Debtor does not have a record interest):

Gwendolyn Purnell

**16. Description of real estate:**

County of: Philadelphia

Address of
Real Estate: 1827 Morris St, Philadelphia, PA, 19145

APN: 363115600

206'8" W 18TH ST; 16'X62'3"

**17. MISCELLANEOUS:**

Case ID: 220601757

# EXHIBIT "D"

Case ID: 220601757

# Notice of Cancellation

**(Vivint Solar Copy)**

---

**Transaction Date:** 2018-11-28        **Service Number:**

You may cancel this transaction, without any penalty or obligation, within three (3) business days after the transaction date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten (10) business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within twenty (20) days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram, to Vivint Solar Developer, LLC, at 1800 W Ashton Blvd, Lehi, UT 84043, Attn: Processing Department prior to 2018-12-05      .

I hereby cancel this transaction.

Date: _____

Customer's Signature: _____

✓  **BY CHECKING THIS BOX, YOU ACKNOWLEDGE RECEIPT OF THIS NOTICE OF CANCELLATION AS OF THE TRANSACTION DATE, AND AGREE THIS CHECKBOX CONSTITUTES YOUR ELECTRONIC SIGNATURE.**

Copyright © 2018 Vivint Solar Developer, LLC. All Rights Reserved.        NOTICE OF CANCELLATION (3/2018, v Case ID: 220601757

# Notice of Cancellation

(Customer Copy)

Transaction Date: 2018-11-28          Service Number: 

You may cancel this transaction, without any penalty or obligation, within three (3) business days after the transaction date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten (10) business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within twenty (20) days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram, to Vivint Solar Developer, LLC, at 1800 W Ashton Blvd, Lehi, UT 84043, Attn: Processing Department prior to    2018-12-05         .

I hereby cancel this transaction.

Date: _____

Customer's Signature: _____

Copyright © 2018 Vivint Solar Developer, LLC. All Rights Reserved.

Case ID: 220601757

# EXHIBIT "E"

Case ID: 220601757

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

DocuSign Envelope ID: C807AB69-7755-4934-A2A5-98037C9A95D9

November 28, 2018

**FOR ALL BORROWERS:**

### NOTICE OF CANCELLATION

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENT MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO LOANPAL, AT 8781 SIERRA COLLEGE BLVD., ROSEVILLE, CA 95746 NOT LATER THAN MIDNIGHT OF December 1, 2018.

I HEREBY CANCEL THIS TRANSACTION.

_____
Date

_____
Borrower

Case ID: 220601757

# EXHIBIT "F"

Case ID: 220601757



**COMMUNITY LEGAL SERVICES**
OF PHILADELPHIA

November 9, 2020

Vivint Solar Developer, LLC
1800 W Ashton Blvd.
Lehi, UT 84043
Attn: Processing Department

     -and-

Loanpal
8781 Sierra College Blvd.
Roseville, CA 95661

BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Re:    Gwendolyn Purnell
       1827 Morris Street, Philadelphia, PA 19145
       Vivint Solar Home Improvement Agreement No. ████████████████
       Vivint Solar Account No. ████
       Loanpal Loan Agreement No. ████████
       Date of Transaction(s): November 28, 2018

**NOTICE OF CANCELLATION**

To Whom It May Concern:

    Please be advised that I represent Gwendolyn Purnell. On her behalf, I am writing pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-7 ("the CPL"), to hereby rescind and cancel the above transaction(s), relating to the purchase and/or installation of solar panels and the associated financing agreement. Ms. Purnell retains the right to this date to cancel these transactions because she was not provided with proper notice of her right to cancel before November 6, 2020, at the earliest. (Please note that Ms. Purnell does not concede that she was ever given proper notice.)

    Ms. Purnell hereby makes available to you at her residence in substantially as good condition as when received, any goods delivered to her under these transactions. Please notify me or Ms. Purnell whether you intend to repossess or to abandon any shipped or delivered goods. If you elect to repossess but do not do so twenty days of the date of this notice of cancellation, Ms. Purnell will retain or dispose of the goods without any further obligation.

    Pursuant to the CPL, 73 P.S. § 201-7(c), you must, within ten business days after the receipt of this notice, (i) refund all payments made under the contract or sale; (ii) return any goods or property traded in, in substantially as good condition as when received by you; and (iii)

Page 2
Vivint Solar Developer, LLC and Loanpal
November 9, 2020

cancel and return any negotiable instrument executed by Ms. Purnell in connection with the contract or sale and take any action necessary or appropriate to terminate promptly any security interest created in the transaction.

Please let me know if you have any questions or wish to discuss this matter.

Sincerely,

Peter D. Schneider
Supervising Attorney

Case ID: 220601757

# EXHIBIT "G"

Case ID: 220601757

LOAN STATEMENT

# LOANPAL
finance made friendly

| | |
|---|---|
| Statement Date: | 2/9/2021 |
| Loan Number: | |
| Payment Due Date: | 2/22/2021 |
| **TOTAL AMOUNT DUE:** | **$118.24** |

1oz - #10 - J286993 - 2149 - 2149
GWENDOLYN PURNELL
1827 MORRIS ST
PHILADELPHIA PA  19145-1411

For Billing Inquiries, Please Call (800) 345-9372
or Email customerservice@loanpalsupport.com

If you have previously authorized automatic funds transfers to make your payments, your payment will be made on the Due Date listed above, and the amount of the payment will be the Total Amount Due listed above.

Your online Home Improvement Loan Portal **is active.** To enroll you will need your loan number and zip code.
You can always access your portal at www.loanpal.com

| ACCOUNT INFORMATION | |
|---|---|
| Property Address: | 1827 MORRIS ST Philadelphia, PA  19145 |
| Outstanding Principal: | $18,333.71 |
| Target Principal Balance: | $12,951.22 |
| Target Balance Date: | 8/22/2020 |
| Maturity Date: | 2/22/2039 |
| Interest Rate: | 3.99% |

| EXPLANATION OF AMOUNT DUE | |
|---|---|
| Principal & Interest: | $118.24 |
| Fees: | $0.00 |
| Current Payment Due: | $118.24 |
| Overdue Amount: | $0.00 |
| **TOTAL AMOUNT DUE:** | **$118.24** |

| PAYMENT ACTIVITY SINCE LAST STATEMENT | |
|---|---|
| Principal: | $61.03 |
| Interest: | $57.21 |
| Fees: | $0.00 |
| **TOTAL PAYMENTS:** | **$118.24** |

## Thank you for choosing Loanpal
## for your financing needs.

Bankruptcy notice: If you are currently involved in a bankruptcy proceeding or have been discharged of your personal liability for the repayment of the debt, this notice is being provided for informational purposes only. It is not an attempt to hold you personally responsible for the debt. Any rights we may choose to pursue will be exercised against the property only.

For non-electronic payments, please detach section and return:

GWENDOLYN PURNELL
1827 MORRIS ST
PHILADELPHIA, PA  19145

| Loan Number: | |
|---|---|
| Payment Due Date: | 2/22/2021 |
| TOTAL AMOUNT DUE: | $118.24 |

# LOANPAL

LOANPAL
PO BOX 4387
PORTLAND OR  97208-4387

1oz - #10 - J286993 - 2149 - 2149

LOAN STATEMENT

# LOANPAL
finance made friendly

| | |
|---|---|
| Statement Date: | 3/9/2021 |
| Loan Number: | |
| Payment Due Date: | 3/22/2021 |
| **TOTAL AMOUNT DUE:** | **$118.24** |

For Billing Inquiries, Please Call (800) 345-9372
or Email customerservice@loanpalsupport.com

If you have previously authorized automatic
funds transfers to make your payments, your
payment will be made on the Due Date listed
above and the amount of the payment will be the
Current Payment Due listed below. If you owe
more than this amount, please access the Home
Improvement Loan Portal or call our Customer
Service number to arrange an additional
payment.

1oz - #10 - J288907 - 2949 - 2949
GWENDOLYN PURNELL
1827 MORRIS ST
PHILADELPHIA PA  19145-1411

Your online Home Improvement Loan Portal is active. To enroll you will need your loan number and zip code.
You can always access your portal at www.loanpal.com

| ACCOUNT INFORMATION | |
|---|---|
| Property Address: | 1827 MORRIS ST Philadelphia, PA  19145 |
| Outstanding Principal: | $18,280.36 |
| Target Principal Balance: | $12,951.22 |
| Target Balance Date: | 8/22/2020 |
| Maturity Date: | 2/22/2039 |
| Interest Rate: | 3.99% |

| EXPLANATION OF AMOUNT DUE | |
|---|---|
| Principal & Interest: | $118.24 |
| Fees: | $0.00 |
| Current Payment Due: | $118.24 |
| Overdue Amount: | $0.00 |
| **TOTAL AMOUNT DUE:** | **$118.24** |

| PAYMENT ACTIVITY SINCE LAST STATEMENT | |
|---|---|
| Principal: | $53.35 |
| Interest: | $64.89 |
| Fees: | $0.00 |
| **TOTAL PAYMENTS:** | **$118.24** |

Thank you for choosing Loanpal
for your financing needs.

Bankruptcy notice: If you are currently involved in a bankruptcy proceeding or have been discharged of your personal liability for the repayment of the debt, this notice is being provided for informational purposes only. It is not an attempt to hold you personally responsible for the debt. Any rights we may choose to pursue will be exercised against the property only.

For non-electronic payments, please detach section and return:

GWENDOLYN PURNELL
1827 MORRIS ST
PHILADELPHIA, PA  19145

3/18/21

| | |
|---|---|
| Loan Number: | |
| Payment Due Date: | 3/22/2021 |
| **TOTAL AMOUNT DUE:** | **$118.24** |

#IDVGVQQVF5

# LOANPAL

LOANPAL
PO BOX 4387
PORTLAND OR  97208-4387

1oz - #10 - J288907 - 2949 - 2949

# EXHIBIT "H"

Case ID: 220601757

**goodleap**

PO Box 4387
Portland, OR 97208

P: 1-800-345-9372

customerservice@goodleapsupport.com

July 8, 2021

**VIA U.S. MAIL AND CERTIFIED MAIL**

Gwendolyn Purnell
1827 MORRIS ST
PHILADELPHIA, PA, 19145

Billing Account Number: ███████

Dear Gwendolyn Purnell,

Your loan is in a delinquent status and is near 60 days past due. Immediate action is needed to prevent the status from escalating. We are now reporting to credit agencies that your payments are past due and will continue to do so until the loan is brought current.

Additional collection actions may be taken soon per your agreement with us.

Contact us by calling **1-800-345-9372** or emailing **customerservice@goodleapsupport.com**

You can mail your payment today to:
**GoodLeap, PO Box 4387, Portland, OR 97208**

You can also access your Customer Portal to make a secure online payment at www.payGoodLeap.com. If you don't have an account, enrollment is easy! To enroll, all you will need is your Account Number and zip code.

Please note, effective June 2, 2021, Loanpal, LLC changed its name to GoodLeap, LLC.

Thank you,

The GoodLeap Collections Team

---

**NOTICE**: Except as set forth in the bankruptcy notice below, this communication is an attempt to collect a debt and any information obtained will be used for that purpose.

**Bankruptcy notice**: If you are currently involved in a bankruptcy proceeding or have been discharged of your personal liability for the repayment of the debt, this notice is being provided for informational purposes only. It is not an attempt to hold you personally responsible for the debt. Any rights we may choose to pursue will be exercised against the property only.

**PRIVACY DISCLAIMER**: This message contains confidential information and is intended only for the individual named. If you are not the named addressee, you should not disseminate, distribute or copy this email. Please notify the sender immediately by email if you have received this email by mistake and delete this email from your system. Email transmission cannot be guaranteed to be secure or error-free, as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender, therefore, does not accept liability for any errors or omissions in the contents of this message which arise as a result of email transmission. If verification is required, please request a hard-copy version.

Case ID: 220601757

# EXHIBIT "I"

Case ID: 220601757

**goodleap**™

Dear Customer,

GoodLeap has sent a representative to your property to disconnect your solar panels because you are in default of the terms of the Loan Agreement. In the event of default, you agreed to allow – GoodLeap – or its agent access to the solar energy system for the purpose of deactivating the system.

If you feel this deactivation is in error, please call our Collections Department to have your system reactivated.

What's happening and why?

1.  You are in default of your Loan Agreement with GoodLeap and our contractor is here to turn off your solar electric system.

2.  When we disconnect, the system is turned off but not removed. You will then begin paying your utility company for all electricity you use.

3.  Possible legal action may be taken if your loan is not brought current in the next 30 days.

4.  UCC lien will remain on the property until the loan is paid in full.

Please call our Collections Department at 1-844-291-3611 to discuss bringing your account current, re-activating your system, and avoiding any legal actions.

Thank you,

GoodLeap

1-844-291-3611

collections@goodleap.com

This communication is from a debt collector. Except as set forth in the bankruptcy notice below, this is an attempt to collect upon a debt. All information obtained will be used for that purpose.

Bankruptcy notice: If you are currently involved in a bankruptcy proceeding or have been discharged of your personal liability for the repayment of the debt, this notice is being provided for informational purposes only. It is not an attempt to hold you personally responsible for the debt. Any rights we may choose to pursue will be exercised against the property only.

Case ID: 220601757

# EXHIBIT "J"

Case ID: 220601757



# INTERCONNECTION APPLICATION/AGREEMENT - PART 1
### With Terms and Conditions for Interconnection
### For a Level 1 Review (Certified Inverter-based Units of 10kW and under)
*(Application & Conditional Agreement – to be filled out prior to installation)*

## CUSTOMER GENERATOR CONTACT INFORMATION

### Legal Name and Mailing Address of Customer-Generator: (if an Individual, Individual's Name)

Name: Gwendolyn Purnell

Mailing Address: 1827 Morris St

City: Philadelphia          State: PA          Zip Code: 19145

Contact Person (If other than Above): Vivint Solar Developer

Mailing Address (If other than Above): _____

Telephone (Daytime): (215) 755-9748          (Evening): _____

Facsimile Number: _____          E-Mail Address: gpurne2@aol.com

### Alternative Contact Information: (if different from Customer-Generator above)

Name: Cindy Mounga

Mailing Address: 1800 W Ashton Blvd

City: Lehi          State: UT          Zip Code: 84043

Telephone (Daytime): (385) 352-0158          (Evening): _____

Facsimile Number: _____          E-Mail Address: PAInterconnection@vivintsolar.com
          *PLEASE CONTACT BY EMAIL ONLY

### The Customer-Generator Facility's Information:

Facility Address: 1827 Morris St

City: Philadelphia          State: PA          Zip Code: 19145

Nearest Crossing Street: _____

Electric Distribution Company: **PECO**

Account #: ████████████          Meter #: ████████████

Current Annual Energy Consumption: 6,100 kWh          Estimated In-service Date: 3/3/18

Application Fee Enclosed: Yes          Inverter Type: Grid Interactive

Energy Source: Solar (PV)          Manufacturer: Solar Edge

Number of Units: 1          Model Number of Inverter: SE3800H-US

Inverter Rating: 3.8 kW$_{AC}$          Ampere Rating: 90 Amps$_{AC}$          Number of Phases: One

Voltage Rating: 240 V$_{AC}$,          DC Source Rating: 4.725 kW$_{DC}$          Nominal DC Voltage: 350 V$_{DC}$

Power Factor: 96 %,          Frequency: 60 Hz,          IEEE1547/UL1741 Certification: Yes

L1-1

Case ID: 220601757



Utility Accessible Disconnect or Lock Box: <u>Disconnect - Next to Meter</u>

One-line Diagram Attached (Required): <u>Yes</u>                  Site Plan Attached (Required): Yes

Do you plan to export power? <u>Yes, Frequently - Occasional net monthly export</u>

If Yes, Estimated Maximum: _____ kW$_{AC}$,        Estimated Gross Annual Energy Production: _____ kWh

**Equipment Installation Contractor:** (Indicate by owner if applicable)

Name: <u>Vivint Solar</u>

Mailing Address: <u>1800 W Ashton Blvd</u>

City: <u>Lehi</u>                        State: <u>UT</u>  Zip Code: <u>84043</u>

Contact Person (If other than Above): <u>David Gooch</u>

Telephone (Daytime): <u>(385) 352-0158</u>     (Evening): _____

Facsimile Number: _____   E-Mail Address: <u>PAInterconnection@vivintsolar.com</u>
                                        'PLEASE CONTACT BY EMAIL ONLY

**Electrical Contractor:** (If applicable)

Name: <u>Vivint Solar</u>

Mailing Address: <u>1800 W Ashton Blvd</u>

City: <u>Lehi</u>                        State: <u>UT</u>  Zip Code: <u>84043</u>

Contact Person (If other than Above): <u>Donald Stauffer</u>

Telephone (Daytime): <u>(385) 352-0158</u>     (Evening): _____

Facsimile Number: _____   E-Mail Address: <u>tony.stauffer@vivintsolar.com</u>

**Customer-Generator Insurance Disclosure:**

The attached Terms and Conditions contain provisions related to liability, and indemnification and should be carefully considered by the Customer-Generator. The Customer-Generator is not required to obtain liability insurance coverage as part of this Application/Agreement; however, the Customer-Generator is advised to consider obtaining appropriate coverage.

**Customer-Generator Signature:**

I hereby certify that: 1) I have read and understand the Terms and Conditions which are attached hereto by reference and are made a part of this Application/Agreement; and 2) to the best of my knowledge, all of the information provided in this Application/Agreement is true and I agree to abide by the attached Terms and Conditions, including the application process set forth therein.

Customer-Generator Signature: *Gwendolyn Purnell*            Date: <u>11/28/18</u>

Printed Name: <u>Ms Gwendolyn Purnell</u>            Title: <u>Homeowner</u>

Case ID: 220601757



## Conditional Approval to Interconnect Customer-Generator Facility: (for Use by PECO Only)

The requested information is complete and interconnection of the Customer-Generator Facility is approved contingent upon the Terms and Conditions of this Agreement, the return of a duly executed Certificate of Completion, verification of electrical inspection and successful witness test or PECO waiver thereof.

PECO Signature: _____ Date: _____

Printed Name: _____Title: _____

Case ID: 220601757



## Interconnection Application/Agreement
## Terms and Conditions for Interconnection
### For a Level 1 Review (Certified Inverter-based Units of 10kW and under)

1. **Construction of the Customer-Generator Facility**. The Customer-Generator may proceed to construct (including operational testing not to exceed 2 hours) the Customer-Generator Facility once the approval to install the Customer-Generator Facility has been received from the Electric Distribution Company (PECO).

   The Customer-Generator Facility shall be constructed in accordance with information provided in Part 1 of the Interconnection Application/Agreement, IEEE 1547 and the Commission's regulations.

   Once an Interconnection Request is deemed complete, any modification to the proposed Customer-Generator Facility that would affect the application review criteria for a Level 1 review that is not agreed to in writing by PECO, shall require submission of a new Interconnection Request.

2. **Interconnection and Operation**. The Customer-Generator may interconnect and operate the Customer-Generator Facility with PECO's system once all of the following have occurred:

   2.1. Electrical Inspection:  Upon completing construction, the Customer-Generator will have the Customer-Generator Facility inspected or otherwise certified by the local electrical wiring inspection authority having jurisdiction over the Customer-Generator Facility.

   2.2. Certificate of Completion: The Applicant shall provide PECO with a completed copy of the Certificate of Completion, including evidence of the electrical inspection by the local authority having jurisdiction.  The evidence of completion of the electrical inspection may be provided on inspection forms used by local inspecting authorities.

   2.3. Inspection:  PECO has either completed its inspection or waived the right to inspection in the Application/Agreement as follows:

      2.3.1.   PECO Right of Inspection.  After receipt of the Certificate of Completion, PECO will, upon reasonable notice (minimum of 10-days notice as noted in 2.3.2 below) and at a mutually convenient time, conduct an inspection of the Customer-Generator Facility and perform a Witness Test to ensure that all equipment has been

Case ID: 220601757



appropriately installed and that all electrical connections have been made as required.

    2.3.2.  Witness Test. For Level 1 review projects only, if PECO does not inspect the installation within the minimum notice period of 10 business days, or by mutual agreement of the Parties, the Witness Test is deemed waived.

2.4. Metering: Revenue quality metering equipment shall be installed and tested by PECO. (Note: PECO may allow interconnected operations prior to the meter installation.)

2.5. Acceptance:  PECO's representative has signed Part 2, the Certificate of Completion, approving the facility for energization.

3.  **Periodic Testing**. All interconnection-related protective functions and associated batteries shall be periodically tested at intervals specified by the manufacturer, system integrator, or authority that has jurisdiction over the Customer-Generator Facility interconnection. Periodic test reports or a log for inspection shall be maintained.

4.  **Safe Operations and Maintenance**.  The Customer-Generator shall be fully responsible for the operation, maintenance and repair of the Customer-Generator Facility as required to ensure that the Customer-Generator Facility complies at all times with the interconnection standards it has been certified to meet.

5.  **Access**.  PECO shall have access to the metering equipment and the disconnect/isolation device of the Customer-Generator Facility at all times.  PECO shall provide reasonable notice to the Customer-Generator, when possible, prior to using its right of access.  In an emergency or outage situation, where there is no access to an AC disconnect/isolation device such as a switch or breaker, PECO may disconnect the electrical service to the premises.

6.  **Exterior AC Disconnect Switch / Isolation Device**. Small generator facilities shall be capable of being isolated from PECO by means of a lockable, visible-break isolation device accessible by PECO. The isolation device shall be installed, owned and maintained by the owner of the small generation facility and located between the small generation facility and the point of interconnection. A draw-out type circuit breaker with a provision for padlocking at the draw-out position can be considered an isolation device for purposes of this requirement.

An interconnection customer may elect to provide PECO access to an isolation device that is contained in a building or area that may be unoccupied and locked or not otherwise readily accessible to PECO, by installing a lockbox provided by PECO that shall provide ready access to the isolation device. The interconnection customer shall install the lockbox in a location that is readily accessible by PECO and the interconnection customer shall permit

Case ID: 220601757



PECO to affix a placard in a location of its choosing that provides clear instructions to PECO operating personnel on access to the isolation device. The interconnection customer, at its option, may provide and install both the lockbox & placard.

7. **Operations / Disconnection**. PECO may temporarily disconnect the Customer-Generator Facility upon occurrence of the following conditions:

   7.1. For scheduled outages upon reasonable notice,

   7.2. For unscheduled outages or emergency conditions,

   7.3. If PECO determines that the Customer-Generator Facility does not operate in a manner consistent with this Application/Agreement.

   7.4. If PECO determines that continued operation of the Customer-Generator Facility is a safety hazard to PECO's personnel or to the general public.

   7.5. In the event the interconnection equipment used by the Customer-Generator Facility is de-listed by the Nationally Recognized Testing Laboratory that provided the listing at the time the interconnection was approved and PECO ascertains that continued operation has the potential to cause a safety, reliability or a power quality problem.

8. **Indemnification.** The Parties shall at all times indemnify, defend, and save the other Party harmless from, any and all damages, losses, claims, including claims and actions relating to injury to or death of any person or damage to property, demand, suits, recoveries, costs and expenses, court costs, attorney fees, and all other obligations by or to third parties, arising out of or resulting from the other Party's action or inactions of its obligations under these terms and conditions on behalf of the indemnifying Party, except in cases of gross negligence or intentional wrongdoing by the indemnified Party.

9. **Limitation of Liability**. Each party's liability to the other party for any loss, cost, claim, injury, liability, or expense, including reasonable attorney's fees, relating to or arising from any act or omission in its performance of these terms and conditions, shall be limited to the amount of direct damage actually incurred. In no event shall either party be liable to the other party for any indirect, incidental, special, consequential, or punitive damages of any kind whatsoever.

10. **Termination.** This Application/Agreement may be terminated under the following conditions:

    10.1. By Customer-Generator. The Customer-Generator may terminate this Application/Agreement by providing written notice to PECO.

Case ID: 220601757



10.2.  By PECO. PECO may terminate this Application/Agreement if the Customer-Generator fails to remedy a violation of terms of this Application/Agreement upon written notice and a reasonable opportunity to cure.

11. **Permanent Disconnection**.  In the event the Application/Agreement is terminated, PECO shall have the right to disconnect its facilities or direct the Customer-Generator to disconnect its Customer-Generator Facility.

12. **Survival Rights**.  This Application/Agreement shall continue in effect after termination to the extent necessary to allow or require either Party to fulfill its rights or obligations that arose under the Application/Agreement.

13. **Assignment/Transfer of Ownership of the Customer-Generator Facility**: This Application/Agreement shall survive the transfer of ownership of the Customer-Generator Facility to a new owner unless the new owner terminates this Application/Agreement and so notifies PECO in writing.  PECO will be responsible for contacting the new customer to execute a new Application/Agreement or assignation agreement, in order for the new owner to be treated as a Net Metering customer.

14. **Definitions**. The capitalized terms used herein, and the definitions of such terms, are as those used in regulations adopted by the Pennsylvania Public Utility Commission at 52 Pa. Code § 75.22, relating to Interconnection Standards and Definitions.

15. **Notice**. Unless otherwise provided in this Application/Agreement, any written notice, demand, or request required or authorized in connection with this Application/Agreement ("Notice") shall be deemed properly given if delivered in person, delivered by Electronic Mail (E-mail) delivered by recognized national courier service, or sent by first class mail, postage prepaid, to the person specified below:

**If to PECO:**

The contact listed on PECO's website as the primary contact for PECO listed in the Customer-Generator's Facility Information section on Page 1 of the Interconnection Application/Agreement.

**If to Customer-Generator:**

The contact listed in the Legal Name and Mailing Address of Customer-Generator section on Page 1 of the Interconnection Application/Agreement.  The Customer-Generator is responsible for notifying PECO of any change in the contact party information.

Case ID: 220601757



In the event the original applicant sells or otherwise transfers ownership of the property listed in the <u>Customer-Generator Facility's Information</u> section listed on Page 1 of the Interconnection Application/Agreement, the original applicant shall provide PECO with the appropriate contact information for the new owner of the property.  Upon any subsequent transfer of ownership, the then current owner shall provide PECO with the new owner's information.

Case ID: 220601757

JURISDICTIONAL NOTES:

Morris St



Mountain St

1827 Morris Street

## GENERAL ELECTRICAL NOTES:

1. ALL WIRING MUST BE PROPERLY SUPPORTED BY DEVICES OR MECHANICAL MEANS DESIGNED AND LISTED FOR SUCH USE. FOR ROOF-MOUNTED SYSTEMS, WIRING MUST BE PERMANENTLY AND COMPLETELY HELD OFF OF THE ROOF SURFACE.

2. ANY CODE VIOLATIONS EVIDENT IN THE INTERCONNECTION PANEL WILL BE CORRECTED ON INSTALLATION.

3. SYSTEM SHALL BE INSTALLED IN ACCORDANCE WITH ALL RELEVANT CODE.

4. RAPID SHUTDOWN INITIATION TAKES PLACE WITHIN THE FIRMWARE OF THE INVERTER. RAPID SHUTDOWN COMMENCES UPON LOSS OF UTILITY SOURCE VOLTAGE.

5. SEE "E 1.0 AND "E 2.0 FOR DIAGRAMS, CALCULATIONS, SCHEDULE AND SPECIFICATIONS.

## GENERAL STRUCTURAL NOTES:

a. THE SOLAR PANELS ARE TO BE MOUNTED TO THE ROOF FRAMING USING THE SHM SYSTEM BY UNIRAC. THE MOUNTING FEET ARE TO BE SPACED AS SHOWN IN THE DETAILS, AND MUST BE STAGGERED TO ADJACENT FRAMING MEMBERS TO SPREAD OUT THE ADDITIONAL LOAD.

b. UNLESS NOTED OTHERWISE, MOUNTING ANCHORS SHALL BE ⅜" LAG SCREWS WITH A MINIMUM OF 2½" PENETRATION INTO ROOF FRAMING.

c. THE PROPOSED PV SYSTEM ADDS 2.6 psf TO THE ROOF FRAMING SYSTEM.

d. ROOF LIVE LOAD = 20 psf TYPICAL, 9 psf UNDER NEW PV SYSTEM.

e. GROUND SNOW LOAD = 25 psf.

f. WIND SPEED = 115 mph.

g. EXPOSURE CATEGORY = B.

## PHOTOVOLTAIC SYSTEM SPECIFICATIONS:

SYSTEM SIZE - 4.725kW DC | 3.800kW AC

MODULE TYPE & AMOUNT - (15) Hanwha Solar Q.PEAK BLK-G5 315 WITH 15 SolarEdge P320 OPTIMIZERS

MODULE DIMENSIONS - (L/W/H) 66.34"/ 39.37"/ 1.26"

INVERTER - (1) SolarEdge Technologies SE3800H-US000NNC2

INTERCONNECTION METHOD - LOAD BREAKER

## GOVERNING CODES

ALL WORK SHALL CONFORM TO THE FOLLOWING CODES:
a. 2009 NATIONAL ELECTRICAL CODE
b. 2009 INTERNATIONAL RESIDENTIAL CODE
c. 2009 INTERNATIONAL FIRE CODE
d. ANY OTHER LOCAL AMENDMENTS

## SHEET INDEX:
COVER SHEET
PV 1.0 - SITE PLAN
S 1.0 - MOUNT DETAILS
E 1.0 - ELECTRICAL DIAGRAM
E 2.0 - ELECTRICAL NOTES
E 3.0 - WARNING LABELS
E 4.0 - WARNING LABEL LOCATIONS

vivint.Solar
1800 ASHTON BLVD, LEHI, UT, 84043
1.877.404.4129
PA LICENSE: HIC-089970

PURNELL RESIDENCE
1827 MORRIS ST
PHILADELPHIA, PA, 19145
UTILITY ACCOUNT #: 15713-00909

SERVICE #: 84020274
REGIONAL
OPERATING CENTER: PA-02
DATE: 11/30/2018
DRAWN BY: DRN

COVER SHEET



Case ID: 220601757



Case ID: 220601757

## PV Module Rating @ STC

| Module Make/Model | Hanwha Q.PEAK DUO BLK-G5 315 | |
|---|---|---|
| Max. Power-Point Current (Imp) | 9.41 | Amps |
| Max. Power-Point Voltage (Vmp) | 33.46 | Volts |
| Open-Circuit Voltage (Voc) | 40.29 | Volts |
| Short-Circuit Current (Isc) | 9.89 | Amps |
| Max. Series Fuse (OCPD) | 20 | Amps |
| Nom. Max. Power at STC (Pmax) | 315 | Watts |
| Max. System Voltage | 1000 V IEC(UL) | |
| Voc Temperature Coefficient | -0.28 | %/C |

| AC Output According to art. 690.8(B)(1) | 15.83 | Amps |
|---|---|---|
| Nominal AC Voltage | 240 | Volts |

THIS PANEL IS FED BY MULTIPLE SOURCES (UTILITY AND SOLAR)

Rooftop conductor ampacities designed in compliance with art. 690.8. Tables 310.15(B)(2)(a), 310.15(B)(3)(a), 310.15(B)(16), Chapter 9 Table 4, 5, & 9. Location specific temperature obtained from ASHRAE 2017 data tables.

ASHRAE 2017 -
Highest Monthly 2% D.B. Design Temp.: 34.5 °C
Lowest Min. Mean Extreme D.B. -16.5 °C

| Optimizer | Solar Edge P320 | |
|---|---|---|
| DC Input Power | 320 | Watts |
| DC Max. Input Voltage | 48 | Volts |
| DC Max. Input Current | 13.75 | Amps |
| DC Max. Output Current | 15 | Amps |
| Max. string rating/Inverter dependent. See SE documents. | | |
| Inverter Make/Model | Solar Edge SE8800H-US | |
| CEC Efficiency | 99 | % |
| AC Operating Voltage | 240 | Volts |
| Cont. Max. Output Current | 16 | Amps |
| DC Max. Input Current | 10.5 | Amps |
| Short Circuit Current | 17.5 | Amps |
| Max. Output Fault Current | 17.5 A/20 ms | |

## Conductor Calculations

Wire gauge calculated from code art. 310.15(B)(16) with ambient temperature calculations from art. 310.15(B)(2)(a).
For "On Roof" conductors we use the 90°C column ampacity, the relevant ambient temperature adjustment, and raceway fill adjustments from 310.15(B)(16).
For "Off Roof" conductors we use the 75°C column ampacity, or the 90°C column ampacity with the relevant ambient temperature and raceway fill adjustments, whichever is less.
The rating of the conductor after adjustments MUST be greater than, or equal to, the continuous duty uprated output current.
Calculation Example - Wire Rating (90°C) x Ambient Temperature Adjustment x Conduit Fill Adjustment > Continuous Duty Output Current
(On Roof, Tag 2): 10 gauge wire rated for 40 A. 40 A x 0.96 x 1 (2 Conductors) = 38.4 A >= 18.75 A
(Off Roof, Tag 3): 10 gauge wire rated for 35 A. 35 A >= 19.79 A

## OCPD Calculations

Breakers sized according to continuous duty output current. PV circuit nominal current based off Inverter continuous output current X (1.25)art. 690.8(A)(i).
Inverter continuous output current X (1.25art. 690.8(A)]
Inverter 1 SE8800H-US Max Output = 15.83 A x 1.25 (art. 690.8/A]) = 19.79 A < 20A (OCPD)
system output current w/ continuous duty = 19.79 x <20A (System OCPD)

**Other Notes**

* Designed according to, and all code citations are relevant to, the NEC 2017.

| | |
|---|---|
| INSTALLER: VIVINT SOLAR | Purnell Residence |
| INSTALLER NUMBER: 1.877.404.4129 | 1827 Morris St |
| PA LICENSE: PA089970 | Philadelphia, PA 19145 |
| 6023074 | Created: 12/03/18 |
| | Utility Account:15713-00869 |

vivint.solar

SHEET NAME: Notes Page
SHEET NUMBER: E.2

# solar edge

## Single Phase Inverter
### with HD-Wave Technology
### for North America

SE3000H-US / SE3800H-US / SE5000H-US /
SE6000H-US / SE7600H-US / SE10000H-US / SE11400H-US

INVERTERS




## Optimized installation with HD-Wave technology

- Specifically designed to work with power optimizers
- Record-breaking efficiency
- Fixed voltage inverter for longer strings
- Integrated arc fault protection and rapid shutdown for NEC 2014 and 2017, per article 690.11 and 690.12
- UL1741 SA certified, for CPUC Rule 21 grid compliance
- Extremely small
- High reliability without any electrolytic capacitors
- Built-in module-level monitoring
- Outdoor and indoor installation
- Optional: Revenue grade data, ANSI C12.20 Class 0.5 (0.5% accuracy)



Case ID: 220601757



## Single Phase Inverter
### with HD-Wave Technology for North America
SE3000H-US / SE3800H-US / SE5000H-US /
SE6000H-US/ SE7600H-US / SE10000H-US / SE11400H-US

| | SE3000H-US | SE3800H-US | SE5000H-US | SE6000H-US | SE7600H-US | SE10000H-US | SE11400H-US | |
|---|---|---|---|---|---|---|---|---|
| **OUTPUT** | | | | | | | | |
| Rated AC Power Output | 3000 | 3800 @ 240V 3300 @ 208V | 5000 | 6000 @ 240V 5000 @ 208V | 7600 | 10000 | 11400 | VA |
| Max. AC Power Output | 3000 | 3800 @ 240V 3300 @ 208V | 5000 | 6000 @ 240V 5000 @ 208V | 7600 | 10000 | 11400 | VA |
| AC Output Voltage Min.-Nom.-Max. (183 - 208 - 229) | - | ✓ | - | ✓ | - | - | - | Vac |
| AC Output Voltage Min.-Nom.-Max. (211 - 240 - 264) | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | Vac |
| AC Frequency (Nominal) | 59.3 - 60 - 60.5[1] | | | | | | | Hz |
| Maximum Continuous Output Current 208V | - | 16 | - | 24 | - | - | - | A |
| Maximum Continuous Output Current @240V | 12.5 | 16 | 21 | 25 | 32 | 42 | 47.5 | A |
| GFDI Threshold | 1 | | | | | | | A |
| Utility Monitoring, Islanding Protection, Country Configurable Thresholds | Yes | | | | | | | |
| **INPUT** | | | | | | | | |
| Maximum DC Power @240V | 4650 | 5900 | 7750 | 9300 | 11800 | 15500 | 17650 | W |
| Maximum DC Power @208V | | 5100 | | 7750 | | | | W |
| Transformer-less, Ungrounded | Yes | | | | | | | |
| Maximum Input Voltage | 480 | | | | | | | Vdc |
| Nominal DC Input Voltage | 380 | | | | 400 | | | Vdc |
| Maximum Input Current 208V | - | 9 | - | 13.5 | - | - | - | Adc |
| Maximum Input Current @240V | 8.5 | 10.5 | 13.5 | 16.5 | 20 | 27 | 30.5 | Adc |
| Max. Input Short Circuit Current | 45 | | | | | | | Adc |
| Reverse-Polarity Protection | Yes | | | | | | | |
| Ground-Fault Isolation Detection | 600kΩ Sensitivity | | | | | | | |
| Maximum Inverter Efficiency | 99 | | | 99.2 | | | | % |
| CEC Weighted Efficiency | 99 | | | | | | | % |
| Nighttime Power Consumption | < 2.5 | | | | | | | W |
| **ADDITIONAL FEATURES** | | | | | | | | |
| Supported Communication Interfaces | RS485, Ethernet, ZigBee (optional), Cellular (optional) | | | | | | | |
| Revenue Grade Data, ANSI C12.20 | Optional[2] | | | | | | | |
| Rapid Shutdown – NEC 2014 and 2017 690.12 | Automatic Rapid Shutdown upon AC Grid Disconnect | | | | | | | |
| **STANDARD COMPLIANCE** | | | | | | | | |
| Safety | UL1741, UL1741 SA, UL1699B, CSA C22.2, Canadian AFCI according to T.I.L. M-07 | | | | | | | |
| Grid Connection Standards | IEEE1547, Rule 21, Rule 14 (HI) | | | | | | | |
| Emissions | FCC Part 15 Class B | | | | | | | |
| **INSTALLATION SPECIFICATIONS** | | | | | | | | |
| AC Output Conduit Size / AWG Range | 3/4" minimum / 14-6 AWG | | | | | 3/4" minimum /14-4 AWG | | |
| DC Input Conduit Size / # of Strings / AWG Range | 3/4" minimum / 1-2 strings / 14-6 AWG | | | | | 3/4" minimum / 1-3 strings / 14-6 AWG | | |
| Dimensions with Safety Switch (HxWxD) | 17.7 x 14.6 x 6.8 / 450 x 370 x 174 | | | | | 21.3 x 14.6 x 7.3 / 540 x 370 x 185 | | in / mm |
| Weight with Safety Switch | 22 / 10 | 25.1 / 11.4 | | 26.2 / 11.9 | | 38.8 / 17.6 | | lb / kg |
| Noise | < 25 | | | | | <50 | | dBA |
| Cooling | Natural Convection | | | | | Natural convection | | |
| Operating Temperature Range | -13 to +140 / -25 to +60[3] (-40°F / -40°C option)[4] | | | | | | | °F / °C |
| Protection Rating | NEMA 3R (Inverter with Safety Switch) | | | | | | | |

[1] For other regional settings please contact SolarEdge support
[2] Revenue grade inverter P/N: SExxxxH-US000NNC2
[3] For power de-rating information refer to: https://www.solaredge.com/sites/default/files/se-temperature-derating-note-na.pdf
[4] -40 version P/N: SExxxxH-US000NNU4



© SolarEdge Technologies, Inc. All rights reserved. SOLAREDGE, the SolarEdge logo, OPTIMIZED BY SOLAREDGE are trademarks or registered trademarks of SolarEdge Technologies, Inc. All other trademarks mentioned herein are trademarks of their respective owners. Date: 07/2018/ V01/ENG NAM. Subject to change without notice.

Case ID: 230601757

COMMUNITY LEGAL SERVICES, INC.
By: PETER D. SCHNEIDER, ESQUIRE
Attorney I.D. No. 40351
By: ROBERT W. BALLENGER, ESQUIRE
Attorney I.D. No. 93434
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3718

FLITTER MILZ, P.C.
BY: CARY L. FLITTER
Attorney ID No. 35047
BY: ANDREW M. MILZ
Attorney ID No. 207715
BY: JODY T. LÓPEZ-JACOBS
Attorney ID No. 320522
450 N. Narberth Ave, Suite 101
Narberth, PA 19072
(610) 822-0782

Attorneys for Plaintiff Gwendolyn Purnell

*Filed and Attested by the*
*Office of Judicial Records*
*07 JUL 2022 03:19 pm*
*B. MERCEDES*

| | |
|---|---|
| Gwendolyn Purnell,<br>            Plaintiff,<br><br>      v.<br><br>Goodleap, LLC, *et al.*,<br>            Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL DIVISION<br><br>June Term, 2022<br><br>No. 01757 |

## AFFIDAVIT OF SERVICE

I, Jody Lopez-Jacobs, counsel for Plaintiff Gwendolyn Purnell, swear that on June 27, 2022, the Complaint and Notice to Defend were served on Defendant Goodleap, LLC by certified mail, restricted delivery. Attached is the signed return receipt. I verify that the foregoing is true and correct to the best of my knowledge, information and belief, and that the foregoing is subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date:  __7/7/2022__                              __*s/Jody T. López-Jacobs*_____
                                                 CARY L. FLITTER
                                                 ANDREW M. MILZ
                                                 JODY THOMAS LÓPEZ-JACOBS
                                                 **Flitter Milz, PC**
                                                 450 N. Narberth Avenue, Suite 101
                                                 Narberth, PA  19072
                                                 (610) 822-0782
                                                 cflitter@consumerslaw.com
                                                 amilz@consumerslaw.com
                                                 jlopez-jacobs@consumerslaw.com

                                                 *Attorneys for Plaintiff*

Case ID: 220601757

**SENDER:** *COMPLETE THIS SECTION*

■ 9214 7969 0099 9790 1643 5822 36
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   **Goodleap, Inc.**
   **8781 Sierra College Blvd.**
   **Roseville, CA 95661**

9290 9969 0099 9743 5822 43

2. Article Number *(Transfer from service label)*

   RG Purnell

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Diane Barnard*
☑ Agent
☐ Addressee

B. Received by *(Printed Name)*
DANE BARBATO

C. Date of Delivery
6-87-22

D. Is delivery address different from item 1? ☐ Yes
If YES enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053

**Domestic Return Receipt**

# **Affidavit of Service**

## Court of Common Pleas of Philadelphia County, Pennsylvania
## Case# June 2022-01757

Filed and Attested by the
Office of Judicial Records
06 JUL 2022 11:33 am
B. MERCEDES

### **Gwendolyn Purnell v. Goodleap, LLC etal**

I, **Joseph Valentine,** being duly sworn according to law, deposes and says the following:

I am the process server below named and a competent adult over 18 years of age. I served and made known to **Leroi Taylor** on the **30th** day of **June, 2022** at **12:00pm** at **401 Sharon Ave., Apt. 302, Sharon Hill, PA 19079,** a **Complaint** filed in the above-captioned matter and served in the manner described below:

_X__   PERSONAL SERVICE: Served the within-named person

____   SUBSTITUTE SERVICE: By serving _____ as _____who resides with subject at above address

____   CORPORATE SERVICE: By serving _____ as _____who is authorized to accept service on behalf of the Corporation/Entity/Agency being served

____   POSTED SERVICE: By posting copies in a conspicuous manner to the front door of the property/entity/person being served

____   NON SERVICE: For the reason detailed in the comments below

COMMENTS: _____

The facts herein set forth are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to penalties of the 18 Pa.C.S. 4904 relating to unsworn falsifications to authorities.

Date: _7/5/2022_

Joseph Valentine
Seagull Legal Services Inc.
PO Box 1706
Southampton, PA 18966

COMMUNITY LEGAL SERVICES, INC.
By: PETER D. SCHNEIDER, ESQUIRE
Attorney I.D. No. 40351
By: ROBERT W. BALLENGER, ESQUIRE
Attorney I.D. No. 93434
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3718

Attorneys for Plaintiff Gwendolyn Purnell

Filed and Attested by the
Office of Judicial Records
06 JUL 2022 11:37 am
B. MERCEDES

FLITTER MILZ, P.C.
BY: CARY L. FLITTER
Attorney ID No. 35047
BY: ANDREW M. MILZ
Attorney ID No. 207715
BY: JODY T. LÓPEZ-JACOBS
Attorney ID No. 320522
450 N. Narberth Ave, Suite 101
Narberth, PA 19072
(610) 822-0782

| | |
|---|---|
| Gwendolyn Purnell,<br>             Plaintiff,<br><br>      v.<br><br>Goodleap, LLC, *et al.*,<br>             Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL DIVISION<br><br>June Term, 2022<br><br>No. 01757 |

## AFFIDAVIT OF SERVICE

I, Jody Lopez-Jacobs, counsel for Plaintiff Gwendolyn Purnell, swear that on June 30, 2022, the Complaint and Notice to Defend were served on Defendant Vivint Solar Developer, LLC by certified mail, restricted delivery. Attached is the signed return receipt. I verify that the foregoing is true and correct to the best of my knowledge, information and belief, and that the foregoing is subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Case ID: 220601757

Date:  7/6/2022                                      s/Jody T. Lopez-Jacobs
                                            CARY L. FLITTER
                                            ANDREW M. MILZ
                                            JODY THOMAS LÓPEZ-JACOBS
                                            **Flitter Milz, PC**
                                            450 N. Narberth Avenue, Suite 101
                                            Narberth, PA  19072
                                            (610) 822-0782
                                            amilz@consumerslaw.com
                                            jlopez-jacobs@consumerslaw.com

                                            *Attorneys for Plaintiff*

Case ID: 220601757

**SENDER:** *COMPLETE THIS SECTION*

- 9214 7969 0099 9790 1643 5823 80
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Vivint Solar Developer, LLC
225 Bush Street
Suite 1400
San Francisco, CA 94104

9290 9969 0099 9743 5823 97

2. Article Number *(Transfer from service label)*

Re: Purnell

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent
                         ☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery
D.C.                                6-30-22

D. Is delivery address different from item 1?  ☐ Yes
If YES enter delivery address below:           ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053          Domestic Return Receipt

COMMUNITY LEGAL SERVICES, INC.
By: PETER D. SCHNEIDER, ESQUIRE
Attorney I.D. No. 40351
By: ROBERT W. BALLENGER, ESQUIRE
Attorney I.D. No. 93434
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3718

Attorneys for Plaintiff Gwendolyn Purnell

Filed and Attested by the
Office of Judicial Records
06 JUL 2022 11:35 am
B. MERCEDES

FLITTER MILZ, P.C.
BY: CARY L. FLITTER
Attorney ID No. 35047
BY: ANDREW M. MILZ
Attorney ID No. 207715
BY: JODY T. LÓPEZ-JACOBS
Attorney ID No. 320522
450 N. Narberth Ave, Suite 101
Narberth, PA 19072
(610) 822-0782

| | |
|---|---|
| Gwendolyn Purnell,<br>          Plaintiff,<br><br>          v.<br><br>Goodleap, LLC, *et al.*,<br>          Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL DIVISION<br><br>June Term, 2022<br><br>No. 01757 |

## <u>AFFIDAVIT OF SERVICE</u>

I, Jody Lopez-Jacobs, counsel for Plaintiff Gwendolyn Purnell, swear that on June 30,

2022, the Complaint and Notice to Defend were served on Defendant Sunrun Inc. by certified mail,

restricted delivery.  Attached is the signed return receipt.  I verify that the foregoing is true and

correct to the best of my knowledge, information and belief, and that the foregoing is subject to

the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date: __7/6/2022__

_s/Jody T. Lopez-Jacobs_

CARY L. FLITTER
ANDREW M. MILZ
JODY THOMAS LÓPEZ-JACOBS
**Flitter Milz, PC**
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072
(610) 822-0782
amilz@consumerslaw.com
jlopez-jacobs@consumerslaw.com

_Attorneys for Plaintiff_

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. 9290 9969 0099 9790 1643 5823 04
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sunrun, Inc.
225 Bush Street
Suite 1400
San Francisco, CA 94104

9290 9969 0099 9743 5823 11

2. Article Number *(Transfer from service label)*

Re: Purnell

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery
D. C.                               6-30-22

D. Is delivery address different from item 1?  ☐ Yes
   If YES enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053          Domestic Return Receipt

COMMUNITY LEGAL SERVICES, INC.
By: PETER D. SCHNEIDER, ESQUIRE
Attorney I.D. No. 40351
By: ROBERT W. BALLENGER, ESQUIRE
Attorney I.D. No. 93434
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3718

Attorneys for Plaintiff Gwendolyn Purnell

*Filed and Attested by the Office of Judicial Records
06 JUL 2022 11:39 am
B. MERCEDES*

FLITTER MILZ, P.C.
BY: CARY L. FLITTER
Attorney ID No. 35047
BY: ANDREW M. MILZ
Attorney ID No. 207715
BY: JODY T. LÓPEZ-JACOBS
Attorney ID No. 320522
450 N. Narberth Ave, Suite 101
Narberth, PA 19072
(610) 822-0782

| | |
|---|---|
| Gwendolyn Purnell,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>Goodleap, LLC, *et al.*,<br>　　　　　Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL DIVISION<br><br>June Term, 2022<br><br>No. 01757 |

## AFFIDAVIT OF SERVICE

I, Jody Lopez-Jacobs, counsel for Plaintiff Gwendolyn Purnell, swear that on June 30,

2022, the Complaint and Notice to Defend were served on Defendant Vivint Solar, Inc. by certified

mail, restricted delivery.  Attached is the signed return receipt.  I verify that the foregoing is true

and correct to the best of my knowledge, information and belief, and that the foregoing is subject

to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Case ID: 220601757

Date:  7/6/2022                                  s/Jody T. Lopez-Jacobs
                                                 CARY L. FLITTER
                                                 ANDREW M. MILZ
                                                 JODY THOMAS LÓPEZ-JACOBS
                                                 **Flitter Milz, PC**
                                                 450 N. Narberth Avenue, Suite 101
                                                 Narberth, PA  19072
                                                 (610) 822-0782
                                                 amilz@consumerslaw.com
                                                 jlopez-jacobs@consumerslaw.com

                                                 *Attorneys for Plaintiff*

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. 9290 9969 0099 9790 1643 5823 35
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Vivint Solar, Inc.
225 Bush Street
Suite 1400
San Francisco, CA 94104

9290 9969 0099 9743 5823 42

2. Article Number *(Transfer from service label)*

Re: Purnell

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery
D. C,     6-30-22

D. Is delivery address different from item 1? ☐ Yes
If YES enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053     Domestic Return Receipt

Case ID: 220601757

COMMUNITY LEGAL SERVICES, INC.
By:     Robert W. Ballenger, Esquire                    Attorney for Plaintiff Gwendolyn Purnell
Attorney ID No. 93434
1424 Chestnut Street
Philadelphia, PA 19102
Tel: 215-981-3788
Email: rballenger@clsphila.org

---

| | | | |
|---|---|---|---|
| Gwendolyn Purnell, | | : | COURT OF COMMON PLEAS |
| | Plaintiff | : | PHILADELPHIA COUNTY |
| v. | | : | CIVIL DIVISION |
| | | : | |
| Goodleap, LLC | | : | June Term, 2022 |
| Sunrun, Inc. | | : | No. 01757 |
| Vivint Solar, Inc. | | : | |
| Vivint Solar Developer, LLC | | : | |
| Leroi Taylor, and | | : | |
| John Doe(s) | | : | |
| | Defendants | : | |

To the Office of Judicial Records:

Kindly enter each of our appearances in this matter as co-counsel on behalf of Plaintiff

Gwendolyn Purnell.

Dated: June 24, 2022

/s/ Robert W. Ballenger
Attorney ID No. 93434

/s/ Peter D. Schneider
Attorney ID No. 40351

/s/ Cary L. Flitter
Attorney ID No. 35047

/s/ Jody T. López-Jacobs
Attorney ID No. 320522

Attorneys for Plaintiff

Filed and Attested by the
Office of Judicial Records
24 JUN 2022 12:59 pm
S. GILLIAM

# EXHIBIT C

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GWENDOLYN PURNELL, | CIVIL ACTION No. |
| Plaintiff, | |
| v. | |
| GOODLEAP, LLC; SUNRUN INC.; VIVINT SOLAR, INC.; AND VIVINT SOLAR DEVELOPER, LLC, | |
| Defendant. | |

<u>**DECLARATION OF DAVID DIXON, ESQ.
IN SUPPORT OF NOTICE OF REMOVAL**</u>

I, David Dixon, declare and state as follows:

1.      I am Assistant General Counsel of GoodLeap LLC ("GoodLeap").

2.      I am duly authorized by GoodLeap to make this declaration and testify on its behalf regarding the facts and matters set forth below.

3.      I submit this declaration in support of the notice of removal filed by Defendants Sunrun Inc., Vivint Solar Developer, LLC, Vivint Solar, Inc., and GoodLeap.

4.      The facts set forth herein are based upon my personal knowledge and review of the business records of GoodLeap.

5.      GoodLeap and its members are citizens of the States of California, Delaware, and Texas, for purposes of diversity.

6.      GoodLeap has five members:  Paramount GR Holdings, LLC, a California LLC; Paramount Owner Holding Company, Inc., a Delaware corporation with a principal place

of business in California; Hayes Barnard, a natural person residing in Texas; Tanguy Serra, a

natural person residing in California; and Matthew Dawson, a natural person residing in

California.

       7.     GoodLeap Paramount GR Holdings, LLC, has two members: Paramount

Owner Holding Company Inc., a Delaware corporation with a principal place of business in

California, and BKM Holdings LLC, a California LLC.

       8.     The sole member of BKM Holdings LLC is Hayes Barnard.


I declare under penalty of perjury that the foregoing is true and correct.


Dated:  Bentonville, Arkansas
        May 31, 2022               David Dixon, Esq.

# EXHIBIT D

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## PHIILADELPHIA CIVIL DIVISION

GWENDOLYN PURNELL,

                Plaintiff,

         v.

GOODLEAP, LLC; SUNRUN INC.; VIVINT
SOLAR, INC.; VIVINT SOLAR DEVELOPER,
LLC; AND LEROI TAYLOR,

                Defendants.

CIVIL ACTION NO. 220500085

### NOTICE OF FILING NOTICE OF REMOVAL

NOW COME Defendants Sunrun Inc. ("Sunrun"), Vivint Solar Developer, LLC ("Vivint

Solar Development"), Vivint Solar, Inc. ("Vivint Solar"), GoodLeap, LLC ("GoodLeap"), and

Leroi Taylor ("Mr. Taylor") (collectively, "Defendants"), by and through their respective

undersigned attorneys, to hereby give Notice of Filing of Notice of Removal of this matter to the

United States District Court for the Eastern District of Pennsylvania.  A copy of the Notice of

Removal filed with the United States District Court for the Eastern District of Pennsylvania is attached hereto as Exhibit 1.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

By: _Samantha L. Southall_

Samantha L. Southall (Pa. I.D. No. 80709)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102-2555
Tel.: (215) 665-3800
Fax: (215) 665-8760
Email:  samantha.southall@bipc.com

*Attorneys for Defendant GoodLeap, LLC*

**GORDON REES SCULLY
MANSUKHANI, LLP**


By: _/s/ Alexander Nemiroff_

Alexander Nemiroff (Pa. I.D. No. 92250)
Three Logan Square
1717 Market Street, Suite 610
Philadelphia, Pennsylvania 19103
Tel. (267) 602-2040
Fax: (215) 693-6650
Email: anemiroff@grsm.com

*Attorneys for Defendants Sunrun Inc., Vivint Solar
Developer, LLC, Vivint Solar, Inc. and Leroi Taylor*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2022, I caused a copy of the foregoing document to be served upon the following by electronic court notification and electronic mail:

Peter D. Schneider
Robert W. Ballenger
COMMUNITY LEGAL SERVICES, INC.
1424 Chestnut Street
Philadelphia, PA 19102
pschneider@clsphila.org
rballenger@clsphila.org

Cary L. Flitter
Andrew M. Milz
Jody T. López-Jacobs
FLITTER MILZ, P.C.
450 N. Narberth Ave, Suite 101
Narberth, PA 19072
cflitter@consumerslaw.com
amilz@consumerslaw.com
jlopez-jacobs@consumerslaw.com

/s/ *Samantha L. Southall*
Samantha L. Southall